PRICE *v.* COHEN ET AL.

[No. 222, October Term, 1956.]

458

*Decided June 4, 1957.*

The cause was argued before Collins, Henderson, Hammond and Prescott, JJ., and McLaughlin, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Kenneth C. Proctor,* with whom was *James D. C. Downes* on the brief, for the appellant.

*W. Lee Harrison* for the appellees.

Collins, J., delivered the opinion of the Court.

This is an appeal by the owner of a tract of land from an order of the Circuit Court for Baltimore County denying rezoning.

On August 15, 1955, Thelma D. Price, appellant, petitioner, and her late husband, as owners of a tract of land, located in the Second Election District of Baltimore County, containing 26 acres, more or less, filed a petition with the

Zoning Commissioner of Baltimore County, (the Commissioner), to reclassify such tract from R-6, Residential Zone, to B-L, Business-Local Zone. On September 14, 1955, a hearing was held on this petition before the Commissioner, who denied the reclassification "* * * due to the grade of Liberty Road at the site of the proposed center and being opposite an existing shopping center, a center as proposed would increase the traffic hazard on this very heavily travelled highway; also the recent opinion of the Court of Appeals that since this area is being studied by the Baltimore County Planning Board and an area as great as this should be studied by the Planning Board with recommendations made for the new land Use Map, the above reclassification should Not be had: * * *."

An appeal was taken from the Commissioner to the Board of Zoning Appeals, (the Board), on September 15, 1955. A hearing was held before that Board on March 22, 1956, and on June 7, 1956, the Board handed down a combined opinion and order granting the rezoning. In its opinion the Board stated that, although there was substantial protest from the residents of a surrounding residential development, an inspection of the property showed that it was a considerable distance from any concentrated residence area. The property in question was situated to make it possible for commercial activities to be conducted thereon without any appreciable direct effect on any residential section. Existing commercial facilities are not adequate at the present and for the foreseeable future in view of the continuing growth of the neighborhood. This phenomenal increase in population in the area constitutes a substantial change in conditions which justifies additional commercial zoning. "The traffic situation does present a problem by reason of the fact that the entrance to the property from Liberty Road will be at the brow of a hill. There is no problem, however, which cannot be solved by proper engineering and the possible erection of a traffic light. These are matters for consideration by the State Roads Commission and the Police Department." The Board, feeling that it would be arbitrary and unreasonable to refuse the reclassification, granted it.

A petition for *certiorari* to the Circuit Court for Baltimore County was filed by the residents of the neighborhood on June 13, 1956, which petition was granted. On September 27, 1956, Thelma D. Price, petitioner and appellant here, was permitted by the court to intervene in the proceedings. The case was argued before the trial judge on October 4, 1956, and on December 27, 1956, he filed an opinion and order in which he held that the contemplated shopping center for which the reclassification was sought would generate additional traffic upon Liberty Road causing congestion in the streets and create a traffic hazard. He stated: "Had the record in this case indicated that the widening of Liberty Road would take place within a reasonable time after the reclassification of the said property, this Court would probably have reached a different conclusion as to its decision. In addition, it may well be, although the matter is not before this Court at this time, that if and when Liberty Road is properly widened in the future, that this may be construed as a substantial change in the character of the neighborhood so as to then justify such rezoning." The reclassification was denied and the order of the Board was reversed. From that order the petitioner appeals.

The testimony before the Board showed that this tract was roughly triangular in shape and was bounded on the southwest by Liberty Road on which it had a frontage of approximately 1,750 feet, on the east by Gwynns Falls, and on the north in part by Gwynns Falls and in part by the flood plain from Gwynns Falls. If the reclassification is granted the erection of a shopping center is contemplated. The plan of the Shopping Center provided for an exit approximately in the center of the Liberty Road frontage at the top of a hill and 20 feet above the road surface. From that high point the land fell away to the northwest and that end of the tract was 15 feet below the grade of Liberty Road, and at its southeast end was approximately 25 feet below the grade of that road. From the high point on Liberty Road the sight distance in a northwesterly direction was approximately 1,200 feet and in a southeasterly direction approximately 1,000 feet. Two other entrances to Liberty Road were contem-

plated, one to the northwest and the other to the southeast, each about 550 feet from the high point center entrance. The right-of-way of Liberty Road at this location was 66 feet in width. The present road was 22 feet in width, with stabilized shoulders, making the width 32 feet. Approximately at the southeast end of the tract Liberty Road crossed a bridge, variously estimated at from 24 to 30 feet in width. Located in the vicinity were several filling stations and miscellaneous stores. A branch bank and the Woodmore Shopping Center were located on the opposite side of Liberty Road from petitioner's property. Within a radius of a mile and a half of this tract was a shopping center at Pikesville, one at Colonial Village, and a number of stores on Edmondson Avenue. It was contemplated in the proposed center to have from eighteen to twenty stores and parking places for approximately 800 cars. There was testimony that there had been tremendous growth in the area recently and because of said growth there was need for additional shopping facilities.

Mr. Carden Jamison, who lives within one block and a half from the tract in question, in a neighborhood known as Lochearn, and who was a member of an improvement association there with 475 members, testified as representative of that association, that the members were opposed to a new shopping center and did not need it. It was difficult to get on Liberty Road at some hours of the day because of the traffic. The roads in the vicinity were narrow. Not many people had garages and automobiles were parked on both sides of the streets. With the number of children in the vicinity the Shopping Center would create a very bad traffic hazard.

Mr. Frank Dreyer, Location Engineer of the State Roads Commission, testifying for the petitioner, stated that in the twelve year construction program of the State Roads Commission a dual highway was contemplated along Liberty Road from the Baltimore City line to Randallstown with a proposed right-of-way of 100 feet. However, it was brought out in the argument in this Court that Mr. Bonnell, the Chairman of the State Roads Commission, told the recent session of the Legislature that the twelve year program was behind time.

Mr. Dreyer admitted that at that time Liberty Road was carrying its maximum traffic with the present construction and was as then constructed at peak capacity, but he thought it would be improved sometime in the period between January, 1958, and December, 1961. There were not any finished construction plans available for the dual highway. The contemplated improvement was merely in the planning stage. All the State Roads Commission had as to future plans was a red center line and two red boundary lines showing an increased right-of-way. The drawings had not been approved or signed by anyone. He stated as to Liberty Road: "This road is not planned to have the improvement we normally make on a road carrying this much traffic, if we had room and the right-of-way to do it." Mr. Joseph D. Thompson, a consulting engineer called by the petitioner, testified that there had been a slight decrease in the traffic count on Liberty Road in 1955 over 1954, possibly due to the opening of Route 40 to Frederick, based upon State Roads Commission statistics and his own actual traffic count. In his opinion the use of the proposed property as a Shopping Center would not create an unusual traffic hazard and that, if the tract were developed as a Shopping Center, the peak hours of traffic entering and leaving the property would be at a time other than the peak hours of traffic along Liberty Road. However, on cross examination he admitted that the contemplated Shopping Center would create a reasonably hazardous condition. The pavement was 22 feet in width with 5 foot stabilized shoulders, making a total width of 32 feet. It was possible for cars to park, permitting other vehicles to go around them, which would leave one lane of traffic.

Mr. George Rea, appearing for the protestants, testified that he was a member of the Villa Nova Improvement Association. He had lived in Villa Nova and about 400 yards to the rear of the tract in question for four years. The Association was opposed to the contemplated Shopping Center. There were a number of schools in the area. He had never found the commercial facilities inadequate. Traffic backed up from the cross roads entering Liberty Road. Mr. Walter W. Ewell, testifying as a traffic expert for the protestants,

said the traffic count taken by him indicated that the existing traffic load on Liberty Road approached but did not exceed the capacity of such road. He thought the additional traffic which would be generated by the Shopping Center would exceed the capacity of such road. He did not believe, with three entrances contemplated at the crest of a hill, that it was the best planning. Even if Liberty Road were made a dual highway it would relieve the capacity of that road, but would not solve the cross traffic problem. In his opinion it was unsatisfactory to build two shopping centers opposite each other on a 30 foot road because of the potential cross movement of traffic. He agreed with Mr. Thompson that the peak hours of traffic on Liberty Road were between 4 and 6 P. M. and this would not coincide with the peak load of traffic from the Shopping Center. He thought the establishment of the Shopping Center would be most critical because of the tendency to develop cross road movement. He took an actual count during the peak hours for shopping and found 650 vehicles going along Liberty Road during one hour, and in addition to that 250 vehicles entering or leaving the Woodmore Shopping Center. Comparing these figures, he was of the opinion that within the space of one hour the proposed Shopping Center would have over 500 vehicles entering or leaving it, and under the then conditions this would be over the maximum capacity for Liberty Road.

Of course, as stated many times by this Court in zoning cases where the legislative body has made a rezoning, the courts will not substitute their judgment for that of the legislative body if the zoning is fairly debatable or substitute their judgment for that of the Board as to the wisdom of the action taken. The courts will reverse only where there are no grounds for reasonable debate and where the action of the Board is capricious, arbitrary, discriminatory, or illegal. *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 437, 121 A. 2d 249. The Board here based its opinion partly on an inspection of the property by its members. The personal knowledge of the Board cannot be considered on appeal. The review of the courts is made from the facts from which the conclusion is drawn and not from the conclusion itself.

*American Oil Co. v. Miller,* 204 Md. 32, 43, 102 A. 2d 727, and cases there cited; *Hardesty v. Board of Zoning Appeals,* 211 Md. 172, 177, 126 A. 2d 621. The *Code of Public Local Laws of Baltimore County,* 1948, Title 23, Section 366(a) ; *Code of Baltimore County,* 1955, Title 30, Section 532(a) ; *Code of Public General Laws of Maryland,* 1951, Article 66B, Section 21 (c), provide in part that zoning regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets. *Hardesty v. Board of Zoning Appeals, supra; Temmink v. Bd. of Zon. Appeals,* 212 Md. 6, 128 A. 2d 256. Zoning regulations must be designed to lessen traffic on streets and highways and, in changing zoning regulations, traffic plans should have material consideration. *Mayor and City Council of Baltimore v. Biermann,* 187 Md. 514, 50 A. 2d 804; *N. W. Merchants Term. v. O'Rourke,* 191 Md. 171, 192, 60 A. 2d 743.

Here, the Commissioner found that the proposed Shopping Center would increase the traffic hazard on a very heavily traveled highway to such an extent that the rezoning should be denied. Representatives of large improvement associations in the neighborhood opposing the rezoning, stressed the traffic hazard and that the contemplated Shopping Center was not needed. Mr. Dreyer, the Location Engineer of the State Roads Commission, called by the petitioner, admitted that Liberty Road had its maximum capacity of traffic at that time. The new construction on Liberty Road depended on the twelve year construction program of the State Roads Commission. Mr. Bonnell told the Legislature that the twelve year program was behind time. There were no finished construction plans available for making Liberty Road a dual highway and the contemplated improvement was merely in the planning stage. There were no plans in existence showing anything other than an increased right-of-way and these plans had not been approved. Mr. Dreyer also admitted that Liberty Road was at maximum traffic capacity and the earliest time he gave for improvement was between January, 1958, and December, 1961. Under this testimony the improvement might well not be made until 1961. Mr. Thompson, called by the petitioner, admitted that the contemplated

Shopping Center would increase traffic. The entrances possibly would be a hazard. The trial judge said that, if the record had shown that the widening of Liberty Road would take place within a reasonable time, a different conclusion would have been reached by him.

We are of opinion that the rezoning here would materially increase the traffic hazard on Liberty Road, only 22 feet in width with 5 foot shoulders. This road now handles capacity traffic. It is indefinite also whether Liberty Road will be improved and, if so, when. To grant the rezoning would undoubtedly increase the traffic hazard on this narrow road. As in changing zoning regulations, traffic conditions should be given material consideration, and as this was not done by the Board, its rezoning was arbitrary and an abuse of discretion as found by the trial judge, and the order should be affirmed.

*Order affirmed, with costs.*