TIDEWATER OIL COMPANY, A CORPORATION, GEORGE D. EMERY COMPANY, A CORPORATION, AND ZOLTAN YUHASZ AND FLORENCE YUHASZ, HIS WIFE, PLAIN-TIFFS-APPELLANTS, AND M & T CHEMICALS INC., INTERVENOR, v. MAYOR AND COUNCIL OF THE BOR-OUGH OF CARTERET, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY AND EDWARD ZANAT, BUILDING INSPECTOR OF THE BOROUGH OF CAR-TERET, DEFENDANTS-RESPONDENTS.

Argued February 2, 1965—Decided April 12, 1965.

*Mr. Sam Weiss* argued the cause for plaintiffs-appellants (*Messrs. Jacobson and Winter,* attorneys; *Mr. Weiss,* of counsel).

*Mr. Benedict W. Harrington* argued the cause for defendants-respondents (*Messrs. Kessler, Kessler & Harrington,* attorneys; *Mr. Harrington,* on the brief).

The opinion of the court was delivered

PER CURIAM. This case challenges the validity of provisions of the zoning ordinance of the Borough of Carteret which forbid plaintiff Tidewater Oil Company (Tidewater) from erecting and operating in the "Heavy Industrial B" zone a "tank farm" to store petroleum products for bulk sale, distribution and ultimate off-premises consumption. The nub of the claim is that this use is permitted in the "Heavy In-

dustrial A" zone, that uses more objectionable are allowed in the B zone and that the prohibition is therefore arbitrary and unlawfully discriminatory.

The trial court struck down the proscription as "not in accordance with a classification of land uses reasonably related to and in furtherance of the statutory zoning purposes." 80 *N. J. Super.* 283, 296 (*Law Div.* 1963). The sections in question were amended during the pendency of the borough's appeal to the Appellate Division. That court, reversing the determination of the trial court, found the ordinance as it then stood to be entirely valid. 84 *N. J. Super.* 525 (1964).

## I.

Plaintiffs appealed the judgment to this court without the grant of certification, asserting it to be a cause "involving a question arising under the Constitution of the United States or this State" and so entitled to further review as of right. *N. J. Const. Art.* VI, *sec.* V, *par.* 1(a); *R. R.* 1:2–1(a). Defendants' motion to dismiss the appeal on the ground that the issue does not fall within the proper scope of the quoted phrase was reserved for determination until argument of the appeal on the merits. This requires first attention.

The very limited provision for double appeals without leave arises as an aspect of the new judicial structure of this State created by the *Constitution of* 1947, which is based on the sound tenet of judicial administration that there should ordinarily be only one appeal as of right. *Midler v. Heinowitz,* 10 *N. J.* 123, 129 (1952). The exception of additional review in cases involving constitutional questions has to be based on the thinking that matters of interpretation or application of the organic documents of government and of fundamental rights and obligations warrant a second judicial look if the losing party wants it because they are intrinsically of basic importance. By the same token, the constitutional question should be a real and not merely a superficial one. Consequently this court determined in the early days of the new system that a constitutional question, in the sense intended

by the appellate jurisdiction section of the 1947 instrument, must be "substantial," *Starego v. Soboliski,* 11 *N. J.* 29, 32 (1952), *cert.* denied 345 *U. S.* 925, 97 *L. Ed.* 1356, 73 *S. Ct.* 784 (1953), and not "merely colorable," *State v. Pometti,* 12 *N. J.* 446, 450 (1953).

 It is clearly not enough if the asserted question is only remotely or speciously connected to the constitution by the loose or contrived use of broad constitutional terminology. Shibboleth mouthing of constitutional phrases like "due process of law" and "equal protection of the laws" does not *ipso facto* assure absolute appealability. Otherwise every cause in which nothing more is really at stake than a claim of mere trial error, for example, could be twisted to authorize a second appeal as of right. 536 *Broad St. Corp. v. Valco Mortgage Co., Inc.,* 5 *N. J.* 393, 395 (1950); *Starego v. Soboliski, supra; State v. Caprio,* 14 *N. J.* 64 (1953), *cert.* denied 347 *U. S.* 952, 98 *L. Ed.* 1098, 74 *S. Ct.* 677 (1954); *State v. Greenberg,* 16 *N. J.* 568, 571–72 (1954); *State v. DeMeo,* 20 *N. J.* 1, 5 (1955); *Colacurcio Contracting Corp. v. Weiss,* 20 *N. J.* 258 (1955); *Klotz v. Lee,* 21 *N. J.* 148 (1956); *Essex County v. Hindenlang,* 24 *N. J.* 517 (1957); *State v. Schneider,* 33 *N. J.* 451 (1960), *cert.* denied 365 *U. S.* 859, 81 *S. Ct.* 824, 5 *L. Ed.* 2d 822 (1961); *Amelchenko v. Freehold Borough,* 42 *N. J.* 541, 545 (1964). In addition, there must appear indication of true merit from the constitutional point of view, *i. e.,* that the issue tendered is not frivolous and has not already been the subject of a conclusive judicial determination. *State v. Pometti, supra* (12 *N. J.,* at *p.* 450). See *Camden County v. Pennsauken Sewerage Authority,* 15 *N. J.* 456 (1954); *Butler Oak Tavern v. Division of Alcoholic Beverage Control,* 20 *N. J.* 373, 381 (1956); *Fifth St. Pier Corp. v. City of Hoboken,* 22 *N. J.* 326 (1956).

 The plaintiffs' conclusional contention that the ordinance prohibition of the proposed use by Tidewater is unconstitutionally capricious and discriminatory is broadly cast in the familiar due process and equal protection concepts of the

Fourteenth amendment. But the supporting argument boils down, as in most cases of this kind, to a claim that, in this particular factual setting, the ordinance treatment is unreasonable because not within the purposes and essential considerations or the requirement of uniform regulations specified by the zoning enabling act as necessary to undergird valid local legislation. *N. J. S. A.* 40:55–31 and 32. While these statutory prerequisites have loose constitutional connotations, the fundamental question here resolves itself into a matter of application of statutory standards to a particular factual situation under long established principles. At this relatively advanced stage of the law of land use regulation, it will be the rare case concerned with the validity of use classification which will present an issue of sufficient constitutional involvement for purposes of the double appeal provision. See *Vickers v. Township Committee of Gloucester Township*, 37 *N. J.* 232, 234 (1962), *cert.* denied and appeal dismissed 371 *U. S.* 233, 83 *S. Ct.* 326, 9 *L. Ed. 2d* 495 (1963), and *Morris v. Postma*, 41 *N. J.* 354 (1964), where fundamental questions of the right to exclude common uses from an entire municipality were at stake. We recognize, of course, that new constitutional questions of substance may arise in a generally settled field of law. Also it should be noted that constitutional issues sufficient in the early development of a new area for such appeal purposes may become so settled through the course of judicial decisions as one day to become no longer worthy of a second review without leave. We conclude that cases falling into the type of this one are not appealable from the Appellate Division as of right.

We appreciate that the approach to constitutional appealability which we have projected as the proper one in all cases does pose difficulties both for the unsuccessful party in the Appellate Division in deciding what means to employ to seek an additional review and for this court in attempting to pass fairly upon a motion to dismiss such an appeal taken under claim of right. The litigant's attorney may well not be certain whether his case qualifies without the necessity of certifi-

cation. We have difficulty because the question presented by ordinarily brief motion papers may not be determinable without a full study of the briefs and the entire appendix, generally not then before us. Unless the situation is obvious on the face, the practice has been to reserve the motion until argument on the merits, which means the appeal is as fully heard as if there were no question of the right to bring it. If the alleged issue is then found to be insubstantial and a dismissal on that ground results, there has been a complete waste for everyone involved. See, *e. g., Stiers v. City of Union City,* 41 *N. J.* 243 (1963).

We think, therefore, that in any case where the right to appeal from the Appellate Division is not clear beyond doubt, the proposed appellant should petition for certification, outlining fully his claim to an appeal as of right, as well as any other appropriate reasons indicating why this court should allow further review even if it believes that the case does not present a sufficient constitutional question. The court will then have before it the complete appendix and the briefs below. If a proper constitutional question does appear, the rules provide that "certification shall be granted." *R. R.* 1:10–4(e). If it does not, an appeal may be allowed through certification for other reasons. In no case will a litigant suffer by falling between the millstones and this court will be better able to fulfill its proper function.

While there is no absolute right of appeal here, we feel we should determine the case on its merits since the dimensions of "causes * * * involving a question arising under the Constitution," have previously not been fully clear.

## II.

The validity of the ordinance provisions in question discriminating between the adjoining heavy industrial zones with respect to the storage of petroleum products for off-premises consumption, in the form they took at the time of the decision of the Appellate Division, revolves primarily around local geography and history. The prior opinions recite

the entire factual complex at length and we need not repeat it. Suffice it to say that, in the light of the peculiar geographical situation of this municipality and its long settled land use development, the use classification between the two zones is adequately sustained on the basis of the traffic and safety problems as outlined in the opinion of the Appellate Division. 84 *N. J. Super.*, at *pp.* 533–534. That tribunal's thesis, projected at 84 *N. J. Super.* 532–533, 536, 538, that the classification differences are also validly grounded upon the objective of "diversification of industry"—to prevent alleged possible "mushrooming" and concentration of a single industry to the ultimate exclusion of others thought locally more desirable from the standpoint of tax ratables or employment opportunities for community residents—was not necessary for the result reached and we express no opinion on it.

 There remains Tidewater's contention that it should be permitted to introduce evidence seeking to attack the validity of the amendment adopted while the case was pending in the Appellate Division. This amendment narrowed the zone B exclusion to petroleum refining and storage and thus made more pointed, says Tidewater, the matter of the claimed mushrooming tendency of "tank farms." It urges that a zoning objective to avoid such a result had not previously been relied upon by the borough at trial or in argument and, as we understand it, the evidence sought to be presented would aim at establishing that petroleum storage terminals have no such tendency or effect. Since consideration of such an objective is not required in this case, further evidence relating to it would be of no moment.

The judgment of the Appellate Division is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—6.

*For affirmance, joining Part I of opinion and concurring in result only as to Part II of opinion*—Justice HALL—1.

*For reversal*—None.