J. Cecil Tate et ux v. City of Malvern

5-4762                                             438 S.W. 2d 52

Opinion Delivered March 10, 1969

*Fenton Stanley* and *Dorsey D. Glover* for appellants.

*William C. Gilliam* and *Wiley Smith* for appellee.

LYLE BROWN, Justice.    This is a zoning case.    The appellants are J. Cecil Tate and wife and appellee is the City of Malvern.    Appellants were unsuccessful in having the subject property rezoned from residential to business classification.    The chancery court held that the planning commission's refusal to reclassify the property was not unreasonable, capricious, or arbitrary. The landowners here contend that the trial court's ruling was against the preponderance of the evidence.

318

Cecil Tate has for a number of years held the Ford franchise for Malvern. It is his desire to move from the congested area of the business district and construct a modern retail outlet on the outskirts of the city. For that purpose he purchased an eight-acre tract on U. S. Highway 270 between Malvern and Interstate 30. The Tate acreage is surrounded by, and included in, a substantial tract of land which was zoned in 1960 as residential. In 1958 Malvern obtained the services of the city planning division of the University of Arkansas and after a two-year study a zoning plan for the entire city was adopted. A few years later the then owner of the eight acres sought unsuccessfully to have it reclassified commercial. Mr. Tate thereafter, in 1964, bought the property.

Appellants presented a very persuasive case for reclassification. It was shown that the votes by the planning commission and the city council, whereby rezoning was denied, were close. There are three water mains crossing the eight acres at the back and those easements would there constitute a problem in the construction of homes. A qualified real estate broker and appraiser testified that the highway frontage was most desirable for commercial use and that the rear of the Tate property was low. It was shown that a bowling alley and a dairy bar are located within the residential zoning, they having been constructed prior to the classification. They are permitted to operate as nonconforming uses. A former owner of the Tate tract was of the opinion that the back part was too low to be sewered. Highway 270 will be a major entrance to Malvern off of Interstate 30. Mr. Tate produced a very attractive plan for his proposed construction. Those plans, involving an expenditure of over $125,000, have been approved by Ford Motor Company.

Looking at the other side of the coin, we find considerable evidence favoring the action of the city in denying rezoning. We think the most significant fea-

ture in that respect is the physical development of properties adjacent to the Tate tract. It is bordered on the north by the city park and a reservoir into which water is pumped from the Ouachita River. On the south side there are two residential subdivisions. Brownwood Subdivision contains thirty-three residential lots and at the time of trial contained twenty-nine residences. Immediately south of Brownwood is River Heights Subdivision, containing twenty lots, most all of which have been developed. On the west across Highway 270 and in front of the Tate tract is Edgewood Subdivision. It contains some forty-seven lots which are substantially developed. Finally, on the east side the Tate tract is bordered by a street, a railroad, and three residences. Some fourteen pictures of homes were introduced. They are modern, built mainly of brick, and several have double carports. The shrubs and lawns reflect pride of ownership. A plat of all the described lots in the area bordering the subject property reveals eighty-one separate owners. The few lots still available in Edgewood are described by a real estate agent as being priced at $3500.

Among the eight witnesses who testified in opposition to rezoning were four men who served on the planning commission. Three of them are homeowners in the area in question. Two witnesses were city councilmen and another was mayor at the time the Tate petition was denied. The mayor also resides in the affected area. The points sought to be established by the different witnesses may be summarized as follows: The zoning plan was two years in the making and under the supervision of professional planners from the University of Arkansas; during that period the planning commission met once a month; the entire area was inspected and traffic counts, door-to-door inquiries, and land use maps were utilized; since the adoption of the plan there has been no commercial development in the area; the Tate property is as suitable for residential as it is for any other use; rezoning of the Tate property will be

spot zoning and will devalue the residences; the city council leaned heavily on the judgment of the planning commission; homes were built on the assumption that they would be protected from commercial development; and once the Tate property is rezoned there is no assurance that the ordinary nuisances accompanying the operation of the average garage will not develop.

A total of twenty witnesses testified, many of them extensively. We have fairly summarized the meat of the record. We have not detailed all the factors about which the witnesses testified, but that does not mean that we have overlooked them. We would point out additionally that the chancellor had an unusual problem in judging the weight and credibility of the testimony of a number of witnesses. That was because some of them had at one time favored rezoning of the disputed tract and later changed their thinking. Then there was the problem of the possibility of a conflict of interest as to members of the planning commission who resided in the described residential areas. Of course the chancellor was at a vantage point in ferreting out the answers to those problems.

We recently had occasion to recount some fundamental rules of law applicable generally to zoning cases. *Marling* v. *City of Little Rock*, 245 Ark. 876, 435 S.W. 2d 94 (1968). The burden is on the landowner to preponderantly show, at the trial level, that the action of the city was arbitrary; on appeal we determine whether the trial court's finding was contrary to a preponderance of the evidence; home owners who have relied on residential zoning are entitled to consideration and the use of a particular tract may be reasonably restrained so as not to cause them injury; and rezoning cannot be justified solely on the ground that it is necessary to put a particular tract to its most remunerative use.

Another rule of law comes into play because the Tate tract is surrounded by property zoned residential.

That means that he is asking for spot zoning. Therefore an additional burden of proof is placed on the applicant. The decided weight of authority is found in Yokley, Zoning Law and Practice, § 8-4, third edition (1965). It is there stated that the council can so amend a zoning ordinance when the character of a zoned area has become so changed that a modification is necessary to promote public health, morals, safety, and welfare; but mere economic gain to the owner of a comparatively small area is not sufficient cause to amend.

Applying the recited law to the record before us, we are unable to say that the chancellor's finding that the action of the city was not arbitrary is against the preponderance of the evidence. It is possible that the full development of Highway 270, as presently located, as the connecting link between Malvern and Interstate 30, may eventually change the character of the described subdivisions; nevertheless, we cannot base a finding on that unpredictable event.

Affirmed.