John A. Fogleman, Justice, dissenting. In evaluating the question whether the chancellor’s determination that the city council acted arbitrarily, we must start with the presumption that the city council did not abuse its discretion, but that it has acted with reason and in good faith for the benefit of the public. Following any other course produces an unthinkable and intolerable result— the substitution of the judgment and discretion of the courts for the collective judgment and discretion of the city council, the body in which the lawmaking branch of our government has seen fit to lodge the zoning power. Wenderoth v. City of Fort Smith, 251 Ark. 342, 472 S.W. 2d 74; Little Rock Ry. & Electric Co. v. Dowell, 101 Ark. 223, 142 S.W. 165, Ann. Cas. 1913D 1086. The consideration given to this matter by the city authorities is itself indicative that they acted deliberately and reasonably, rather than arbitrarily or capriciously. First, the Blytheville City Planning Commission unanimously disapproved the rezoning and recommended that the application be rejected. Secondly, the city council rejected the application, both on original consideration and on reconsideration, by a vote of seven to three. The commission did not reach its conclusion summarily. It heard arguments pro and con at a public hearing in December 1971, at which appellees’ attorney was present, after considering the matter in November. It had in 1970 granted a rezoning of a part of the property involved on the petition of appellee Thompson. The rezoned property fronted only on Main Street and on other commercial property, and the property for which rezoning is now sought appeared to constitute a buffer on two sides between commercial and residential areas. The commission had the services and advice of the city’s planning and land development consultant, Mr. Thomas L. Hodges of the Urban Planning and Development Corporation, who had served the city since 1967 and whose qualifications are such as to give weight to his opinions, and to cause appellees’ attorney to remark that he was impressed with them. A new code had been developed with the assistance of this consultant, after numerous meetings of the planning commission and considerable thought and planning, and adopted by the city council on August 10, 1971. The opinion of this expert supported the action of the planning commission and that of the city council. This expert had studied the proper zoning of this property when the earlier rezoning petition was granted, when the comprehensive development plan was prepared and when the pending request was made. The chairman of the planning commission was a Blytheville lawyer who had spent his entire life in that city and who had been familiar with the property all that time. He had been a member of the commission for eight years and its chairman for four. He had participated in two comprehensive planning studies of the city, one in 1964 and the other in 1971. He said that the commission did not always follow the recommendations of their professional adviser in zoning matters. He testified that before the hearing the members of the commission considered the matter for a month and went out and viewed the property involved. Chairman Reid was influenced in his action by the feeling that adjoining residential property, particularly on Walnut Street, would be isolated; that the supermarket parking area would provide a traffic flow between Walnut and Main and increase traffic on both streets and that the supermarket would draw traffic on Walker Avenue into an intersection with Main Street and cause a traffic regulation problem; that the subject property was not in an expanding commercial area; and that there was no need for expansion of the commercial area. Clarence E. Johnson, a member of the planning commission for seven years, was motivated by similar considerations and by the conclusion that traffic problems would result from the backing of trucks into the proposed supermarket loading dock, and that noise from unloading at night and early morning would be offensive. The city council heard the matter at its December 1971 meeting and reconsidered it in January 1972. Proponents of the rezoning were heard. One of the members of the council, who lived in the general area and was an alderman from the ward in which it was located, had observed the property while driving past it five or six times daily. In voting against the rezoning, he considered the lack of commercial development west of the property, the probability that the store would be open all night and on Sundays, the traffic problem from the T intersection of Walker and East Main, the ingress and egress of vehicular traffic at points other than established intersections, and the probability that North Walker Street would be partially blocked at times by trucks serving the supermarket. At least one of the councilmen who voted against the application viewed the property twice between meetings, once in the company of the applicants’ attorney. This alderman considered that, if rezoning were permitted, the property would be the site of the first commercial development on Walnut Street east of Holland. These actions are certainly not indicative of any unreasoned exercise of judgment. Even one of the council members who voted for the application testified when called as a witness by appellees that he exercised his best judgment in the vote, and that the other aldermen did too. He said that he did not think the other aldermen acted arbitrarily. If there was substantial evidence to support the action of the Blytheville City Council, it did not act arbitrarily or capriciously, as that term has been defined in our zoning cases. To act arbitrarily means to act in a manner decisive but unreasoned, or arising from an unrestrained exercise of the will, caprice or personal preference, based on random or convenient selection or choice, rather than on reason or nature. Capricious means “not guided by steady judgment or purpose.” City of Little Rock v. Parker, 241 Ark. 381, 407 S.W. 2d 921; City of North Little Rock v. Habrle, 239 Ark. 1007, 395 S.W. 2d 751. In effect, the application of the appropriate restraint on judicial action in these cases requires that the courts refuse to act unless no reasonable mind could reach the conclusion reached by the city council. See City of Little Rock v. McKenzie, 239 Ark. 9, 386 S.W. 2d 697. While it might seem to us in a review remote in time and distance from the property involved that a preponderance of the evidence supported the rezoning of the property, it is not the function of the courts to weigh the evidence. When they do, chancellors become one-man zoning boards and this court constitutes itself as a super-zoning board with statewide jurisdiction. I feel that the distinguished chancellor fell into error by weighing the evidence in this case and that the majority of this court has followed him down this wrong trail. A review of the testimony reveals evidence tending to show that: the subject property is virtually surrounded by substantial residential property in an old established residential area, with the exception of property west of it on Main Street which is zoned commercial and which abuts the smaller tract earlier rezoned at the instance of the appellee Thompson; the value of the residences would be impaired; west of Walker on Main toward the central business district of Blytheville there are several businesses no longer in operation, several buildings are vacant, many are in need of rehabilitation, and there has been no new commercial development in this area since 1963 or 1964; the only significant commercial development east of the property is at least one-half mile away as one approaches Interstate Highway 55; the last official traffic count on East Main was 10,200 vehicles per day and traffic is increasing; traffic in the area will be increased substantially by the operation of a supermarket on the property, and considerable new traffic drawn from southeast Blytheville for which Walker Boulevard furnishes the principal artery; the increase in traffic would present problems of regulation and make ingress and egress to and from the residences more difficult and hazardous, and the intersection at South Walker and Main, a T-type intersection, would be considerably complicated to the extent that the city would have to take measures to insure traffic safety and to modify the resulting traffic plan; the maneuvering and parking of large trailer trucks at the store’s loading docks would impede traffic and sometimes partially obstruct the street; noise would be generated by traffic, opening and closing of automobile doors and by the large trailer trucks, which normally would make deliveries at the store in the early morning hours, and would be anticipated to experience difficulty in maneuvering into the loading docks; the noise factor would be intensified by echoes from a paved parking lot and by reason of the fact that truck motors are not turned off while unloading; it is advantageous to have substantial exterior lighting in a supermarket parking area; the supermarket would probably be open until 9:00 or 10:00 p.m. or later and on Sundays; substantial trash problems would develop in the area; there would be a health problem if garbage cans existed; vermin control is a problem around a supermarket; the property is not in an R-2 Zone as is all the surrounding residential property, but would be in a B-S Zone (Highway Commercial); it is undesirable to have an R-2 Zone facing a B-3 business; the residences west of the property on Walnut would be "boxed” in between the supermarket and a freight terminal at Holland and Walnut; the comprehensive city plan contemplated the preservation of the residential area; the adjacent commercial area is not expanding, but is deteriorating; there is no need for expansion of the commercial area. Even though the best and most renumerative use of appellees’ property would require the rezoning, those persons residing in the residential area who have relied upon residential zoning have rights at stake and are entitled to consideration, and the use of appellees’ property may be restrained so as not to cause them injury. Benefit to a few individuals cannot be permitted to override the best interests of the residents of the overall area, and the line must be drawn at some point. Mere economic gain to the owner of a comparatively small area is not sufficient cause for rezoning. Marling v. City of Little Rock, 245 Ark. 876, 435 S.W. 2d 94; Downs v. City of Little Rock, 240 Ark. 623, 401 S.W. 2d 210; Tate v. City of Malvern, 246 Ark. 316, 438 S.W. 2d 52. Appellees’ own real estate expert admitted (just as the city planning consultant testified) that the area was not an expanding commercial area and had not been for the past ten years, and that the Thompson house would not be much of a buffer for the residential area on the east. One of the aldermen who voted for the application said that it was undesirable to have a business in a B-3 Zone across the street from an R-2 Zone. Mr. Thompson, Sr., admitted that some of the residential property would be "boxed in” by the rezoning. I do not see how the city action can be called either arbitrary or capricious, even under the extreme standards of the amazingly renascent Little Rock v. Pfeifer, 169 Ark. 1027, 277 S.W. 883,[1] particularly in view of the admission of appellees’ own expert. For this reason, I respectfully dissent. I am authorized to state that the Chief Justice and Mr. Justice Jones join in this dissent. Cf. Ark. Stat. Ann. § 19-2825, et seq. (Repl. 1968); City of Little Rock v. Parker, 241 Ark. 381, 407 S.W. 2d 921. See also, Gitelman, Judicial Review of Zoning, 23 Ark. L. Rev. 22.