James E. LINDSEY *v.* CITY of FAYETTEVILLE,
Arkansas

73-272                                        507 S.W. 2d 101

Opinion delivered April 1, 1974

*Ball, Gallman & Martin,* for appellant.

*David R. Malone,* for appellee.

FRANK HOLT, Justice. Appellant seeks to reverse the ruling of the chancellor affirming the decision of the City Board of Directors which refused appellant's request to rezone a tract of his land from R-3, high density residential, to C-1, neighborhood commercial. Appellant desires to construct a convenience food market and self-service gas station. On appeal we review the chancellor's finding to determine whether it is clearly against the preponderance of the evidence that the action of the City Board in a zoning case was or was not arbitrary, capricious and unreasonable. *Downs* v. *City of Little Rock,* 240 Ark. 623, 401 S.W. 2d 210 (1966), and *City of North Little Rock* v. *Harble,* 239 Ark. 1007, 395 S.W. 2d 751 (1965). Also, there is a presumption that the board acted in a fair, just and reasonable manner. *Economy Wholesale Co., Inc.* v. *Rodgers,* 232 Ark. 835, 340 S.W. 2d 583 (1960). In the instant case, we must affirm.

In 1971 appellant purchased a 3.7 acre vacant tract which was zoned high denisty residential. About a year later he sought to have approximately one acre rezoned for neighborhood commercial usage. The City Planning Commission consisted of nine members. Four of the five members present approved with one abstaining. The City Board of Directors, consisting of seven members, disapproved the requested rezoning by a four to one vote of those who were present and voting. On appeal to the chancery court, appellant adduced evidence which indicated that the heavy traffic, noise and patchwork commercial development in the area made his property better suited for the requested light commercial use. Among witnesses in behalf of appellant were owners of various types of businesses in the nearby area. Appearing in behalf of the city were a professional planner employed by the city and a former member of the City Board of Directors. No property owner contiguous to appellant's property testified in opposition.

Appellant's property is located on the southeast corner of North Street and Leverett. North Street is an east—west, two-lane thoroughfare, carrying a very heavy traffic volume since it connects Highway 71 and Garland Avenue. Leverett, also a two-lane avenue, runs north and south from the

University of Arkansas and carries a great deal of traffic. The traffic at the intersection is controlled by a four-way stop and at times during the day traffic is so congested it backs up considerably. The area of Fayetteville where the land is located can be characterized as one of mixed uses. It is not, as appellant contends, an established business district. There are established commercial and light industrial areas nearby, as well as a sewage pumping station which sometimes creates a noxious odor. Appellant strongly argues that these conditions create a justification for his rezoning proposal. However, the chancellor concisely articulated within this thorough oral opinion:

> It also must be observed that the testimony equally shows, and is graphically shown by the aerial photo, that although you must concede the existence and near proximity of light industry and commercial areas, and . **** the sewage pumping station, it is equally true that on two of the four sides of adjacent property it is all residential. It is wholly residential west of Leverett, immediately across the street from this property sought to be rezoned. It is wholly residential south of the property sought to be rezoned, the Skull Creek apartments complex. It is wholly residential, that is, spin-off residential use, immediately east of the property sought to be rezoned. The tennis courts and the swimming pool. And except for the little rectangle of something over an acre where the sewage pumping station is, is also residential.

> Immediately across the street is the church house which you can't very well classify as light commercial, industrial or residential. It's sort of in a class by itself.

> Catawampus northwest across from the approximately one acre that Mr. Lindsey seeks to have rezoned is a residential area on the west side of Leverett, north of North Street for a good distance on down, going north. So, from a mere physical analysis, it appears that this particular property is bounded on one side, primarily, by commerical and light industry. Not quite so close, but still close enough to be apparent, on another side, the east side, primarily, by commercial and light industry. But on the other two sides, wholly residential.

The power to enact and enforce a zoning ordinance must relate to public health, safety, morals and the general welfare. *City of Little Rock* v. *Sun Bldg. and Developing Co.*, 199 Ark. 333, 134 S.W. 2d 582 (1939). When the city council enacts a zoning ordinance, it acts legislatively rather than judicially. *City of North Little Rock* v. *Linn*, 252 Ark. 364, 479 S.W. 2d 236 (1972). Where the character of a zoned area has become so changed that modification is necessary to promote traditional police power objectives, the council can amend the zoning ordinance; but the council cannot amend merely to give greater economic gain to the owner of a comparatively small area. *Tate* v. *City of Malvern*, 246 Ark. 316, 438 S.W. 2d 52 (1969). Nor can rezoning be justified solely on the ground that it is necessary to put a tract of land to its most remunerative use. *Tate, supra.*

We have in the past approved residential rezoning to commercial use when faced with an established and expanding business district. *Metropolitan Trust Co.* v. *City of North Little Rock*, 252 Ark. 1140, 482 S.W. 2d 613 (1972), and *City of North Little Rock* v. *McKenzie*, 239 Ark. 9, 386 S.W. 2d 697 (1965). However, both of these cases presented more pressing circumstances than those involved in the instant case. In *Metropolitan Trust Co., supra*, where we upheld rezoning by the city council, the involved property was at the intersection of the Jacksonville Expressway and McCain Boulevard. The expressway was a four-lane boulevard with a daily traffic count of 21,000 vehicles and a 75 m.p.h. speed limit. The property was located on the only quadrant of the intersection zoned residential. The property had never been used for residential purposes and was simply unfit for that use. In *City of Little Rock* v. *McKenzie, supra*, we upheld the city council's rezoning of a residential area for quiet business where the rezoned block was bordered on the east by a four-lane thoroughfare with a daily traffic count exceeding 11,000. See also *Herring* v. *Stannus*, 169 Ark. 244, 275 S.W. 321 (1925), where we reversed the chancellor and reinstated the city council's action in allowing the construction of a service station in a residential area where in the immediate vicinity there were three grocery stores, a meat market, a drug store, cleaners, bakery and another service station. There we said:

This was a question about which reasonable minds

might differ, and did differ sharply as reflected by the testimony in the case ****. The council, under the ordinance, may grant a permit to erect a filling station in a district which is purely residential, if a good cause therefor is shown, and this is a question which addresses itself primarily to the council. The proximity or remoteness of other stations and the volume of traffic were proper matters for the council to consider, and its action is final unless we can say that the council abused its discretion. But this discretion, in so far as a discretion abides, is vested in the council, charged by law with the duty of passing on the question, and does not rest in the courts which review the council's action. ****

The question is not what a member of the court might decide if the question were submitted to him as a matter of discretion, but rather is whether it can be said that the council abused its discretion, and we may not say that such was the case unless that fact clearly appears. This we are unable to say.

In cases similar to the case at bar, we have refused to rezone property for commercial purposes where it was not shown that the council acted arbitrarily. On facts demonstrating commercial development more persuasive than those herein, we have excluded a gasoline station from a residential area. In *McKinney* v. *City of Little Rock,* 201 Ark. 618, 146 S.W. 2d 167 (1941), the lot in question was located on one side near a potato chip factory, gasoline station, cafe, grocery store, bakery, barber shop, beer parlor, sausage factory and an annoying music conservatory. To the north of the lot were a garage, three grocery stores, two service stations, two beauty parlors, a barber shop, a fruit stand, a cleaning establishment, and a shoe shop. All of the establishments were within 600 feet of the lot. As in the case at bar, the traffic on the street in front of the lot was very heavy. There was testimony that a service station would increase the traffic hazard near the schools. We stated:

Moreover, to set aside the decree and finding of the Council would be substituting our judgment for that of the zoning authorities who are primarily charged with the duty and responsibility of determining the question.

This we should not do unless we can say from the evidence that the action of the Council and the decision of the court are unreasonable and arbitrary.

Similarly, in the case at bar, we cannot say that the council acted arbitrarily and unreasonably in deciding to maintain the residential classification zone in an area of mixed uses.

One factor merits additional discussion. It has been suggested that the heavy traffic on North Street and also on Leverett played an important consideration in the council's determination. The flow of traffic and safety related considerations are legitimate concerns for a municipal legislative body in its enactment and enforcement of zoning regulations. *Tidewater Oil Co.* v. *Carteret*, 44 N.J. 338, 209 A. 2d 105 (1965), *Food Corp.* v. *Zoning Bd. of Adjustment*, 384 Pa. 288, 121 A. 2d 94 (1956), and *Crystal Holding Co.* v. *Westfield*, 7 N.J. Misc. 975, 147 A. 916 (1929). See also Anderson, I American Law of Zoning § 7.09 (1968). For example, gasoline stations have been excluded from residential districts due to the increased risk of traffic accidents. *Enzor* v. *Askew*, 191 Ga. 576, 13 S.E. 2d 374 (1971). It has even been held that a failure to consider the effect of reclassification upon the traffic problem may result in judicial disapproval of the change. *Price* v. *Cohen*, 213 Md. 457, 132 A. 2d 125 (1957), *Hardesty* v. *Bd. of Zoning Appeals*, 211 Md. 172, 126 A. 2d 621 (1956). Both *Price, supra,* and *Hardesty, supra,* concerned reclassification of a zone to allow a shopping center to be built without giving consideration to traffic congestion problems. In neither case were plans in existence to widen the roads adjacent to the shopping centers.

Generally, excess traffic alone is not sufficient grounds to justify a change in zoning. *Metropolitan Dade County* v. *Greenlee*, 224 So. 2d 781 (Fla. App. 1969). Our cases indicate that traffic conditions are important factors. *Metropolitan Trust Co.* v. *City of North Little Rock, supra,* is an example of a zoning change largely due to the adjacent highway conditions. *McKinney* v. *City of Little Rock, supra,* reflects that the refusal of a zoning change due to increased traffic hazards that a gasoline station would have created. Traffic conditions, therefore, may be important factors in either refusing or granting a change from residential to commercial zoning.

In the instant case, if the city determined that appellant's proposed convenience market equipped with gas pumps would create a dangerous traffic situation on admittedly heavily travelled two-lane streets, we cannot say that was an arbitrary and unreasonable decision. We note that appellant is left with alternative uses for his land. For example, it is presently zoned to permit apartments, cultural and recreational facilities, and professional offices. The burden was upon appellant to justify the requested rezoning.

In the circumstances, we cannot say the chancellor's finding is clearly against the preponderance of the evidence.

Affirmed.

Byrd, J., dissents.

Conley Byrd, Justice, dissenting. When a proposed zoning change is denied, not because of its adverse effect on neighboring property but because of its adverse effect on traffic or a comprehensive land use plan, it is my position that the denial of the zoning request is not for zoning purposes but for a PUBLIC USE contrary to Ark. Const. Art. 2 § 22 which provides:

"The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

I can find no evidence in the record here to substantiate a finding that the zoning here requested will adversely affect neighboring properties. To the contrary all of the neighboring property owners that appeared testified in favor of the zoning request.

The majority also suggests that appellant is left with alternative uses but here again it appears that they are merely speculating. The proof was that the property was not suitable for apartments and there is a total absence of proof that any of the other suggested uses would be economically feasible.

For the reasons stated, I respectfully dissent.