Ivan H. SMITH et al *v.* The CITY OF LITTLE ROCK, Arkansas et al

82-266                                    648 S.W.2d 454

Supreme Court of Arkansas
Opinion delivered March 28, 1983

Appellant, *pro se.*

*R. Jack Magruder, III,* City Atty., for appellee, City of Little Rock.

*Wallace, Hilburn, Clayton, Calhoon & Forster, Ltd.,* by: *Sam Hilburn,* for appellees Jeannie Hoover, Edna Jones and John L. Burnett.

FRANK HOLT, Justice. The Little Rock City Board of Directors voted unanimously to change the zoning classification of property located at 4908-4932 West Markham, between Monroe and Jackson Streets, from a single family and quiet office classification to "C-3", a general commercial classification as requested by the property owners. A Wendy's restaurant is to be constructed on that site if rezoned. The appellants, who are property owners in that vicinity, filed suit in chancery court to have the rezoning set aside. The chancellor held there is a presumption the Board had acted in a reasonable manner and the appellants had failed to meet their burden of proof which requires them to demonstrate the arbitrariness of its action, so he denied the petition. We affirm.

The appellants first contend: (1) The Court erred in not holding that the City of Little Rock was arbitrary and capricious in acting contrary to Arkansas law as stated in

*City of Little Rock* v. *Faith Evangelical Lutheran Church,* 241 Ark. 187, 406 S.W.2d 875 (1966); (2) The Court erred in not finding the City of Little Rock to be arbitrary and capricious in creating a commercial zone in the middle of a residential block; (3) The Court erred in not finding that the zoning ordinance Number 14 196 was unrelated to the public health, safety, moral and general welfare of the city and that the power of the city board in passing the ordinance was, therefore, arbitrary and capricious; and (4) The Court erred in not finding the City of Little Rock to be arbitrary and capricious in failing to consider the rights of the residents who have relied upon the existing residential zoning. We will discuss these points together since they relate to whether the rezoning by the city was arbitrary and capricious.

The standard of review applicable here is well settled. The decision of the chancellor will be affirmed unless it is clearly erroneous (clearly against the preponderance of the evidence). ARCP, Rule 52 (a); *City of Little Rock* v. *Breeding,* 273 Ark. 437, 619 S.W.2d 664 (1981). There we also said there is a presumption that the City Board acted in a fair, just, and reasonable manner when it rezones or refuses to rezone property and the burden is on the persons attacking the rezoning or refusal to show otherwise. The courts do not have the authority to review zoning legislation *de novo. City of Conway* v. *Conway Housing Authority,* 266 Ark. 404, 584 S.W.2d 10 (1979). There we said:

> [W]hen a municipality, pursuant to authority granted by the General Assembly, takes action in zoning classifications, it is exercising a legislative function and is not subject to review by the courts of its wisdom in so doing . . . . The judiciary has no right or authority to substitute its judgment for that of the legislative branch of government. In zoning matters the General Assembly has delegated legislative power to the cities in matters relating to zoning property. The role of the courts is, therefore, simply to determine whether or not the action of the municipality is arbitrary. Arbitrary has been defined as 'arising from unrestrained exercise of will, caprice, or personal

preference, based on random or convenient choice, rather than on reason or nature.' Courts are not super zoning commissions and have no authority to classify property according to zones.

To the same effect are *City of Batesville* v. *Grace,* 259 Ark. 493, 534 S.W.2d 224 (1976); and *City of Little Rock* v. *Parker,* 241 Ark. 381, 407 S.W.2d 921 (1966).

The appellants argue, *inter alia,* that the rezoning here is inconsistent with The Heights/Hillcrest Plan, a guide for land use decisions adopted in an ordinance on March 17, 1981. This plan, of course, serves only as an advisory or guide and is not binding. *Taylor* v. *City of LR,* 266 Ark. 384, 583 S.W.2d 72 (1979). Here, eight property owners in the area testified that the rezoning to allow a Wendy's restaurant to be built would have detrimental effects on the largely residential neighborhood; e.g., there would be increased traffic problems and hazards, noise, litter, unpleasant odors, vandalism, lights shining into windows at night, and rodents. One was of the view it would be spot zoning. Most of the witnesses were longtime residents in the area. None of the property owners testified they had relied upon the recent Heights/Hillcrest Plan, but some did testify they had chosen to live in the area because of the type of neighborhood it was.

The property in question is, as indicated, located between Monroe and Jackson Streets on the north side of the Markham Street corridor. On the south side of Markham are located the State Hospital, the University of Arkansas Medical Center, War Memorial Park (directly across from the subject property), the State Health Department, and War Memorial Stadium. Jerry Speece, Zoning Administrator for the City of Little Rock, testified in detail with respect to the character of the area on the north side of Markham Street. To the east on the same block are located a single family home and an establishment which sells and rents scuba diving equipment. On the six blocks east of Monroe are located a savings and loan, a branch bank, Peck's Drive-In, a liquor store, a drug store, and other businesses. In the three blocks west of the rezoned property are situated a McDonald's restaurant, an Exxon station, the Black Angus restaurant, a

Kentucky Fried Chicken restaurant, Rob's restaurant, and a motel. Speece also testified that the volume of traffic on Markham is 6,000 to 8,000 vehicles per day below its capacity. He said the Heights/Hillcrest Plan is merely a general guide for city planning and, furthermore, the rezoning in this case is not inconsistent with that plan. He stated the rezoning did not constitute spot zoning, because spot zoning involves zoning one lot in a manner entirely different from the surrounding area, which was not done here. A building permit mandates certain lighting requirements to prevent reflection of lights on adjacent property. The zoning ordinance requires the construction of a four foot opaque fence between commercial and residential property. Access to the rezoned property is limited to Markham Street. In his opinion, as a professional planner, the rezoning from single family and quiet business to commercial use is a reasonable classification.

We cannot say that the decision of the chancellor holding that the rezoning by the City Board of Directors was not arbitrary and capricious is clearly erroneous.

Neither is the decision of the chancellor contrary to our holding in *City of Little Rock* v. *Faith Evangelical Lutheran Church, supra.* There we held the refusal of the City of Little Rock to rezone these properties to "F" commercial was not an arbitrary and capricious decision. We did not hold that it would have been arbitrary and capricious for the city to so rezone the property. We did say, as appellants argue, the proper zoning classification for the property would be "E-1" Quiet Business, but that dictum was merely a comment on the evidence presented in that case and not a decision of this court imposing on the City an unalterable zoning classification for this location.

Appellants next contend that the City Board acted arbitrarily and capriciously in limiting residents to ten minutes in which to present their objections. However, the City Planning Commission had held two public hearings at which the residents were allowed to state their objections. These objections were transcribed and furnished to the City Board before the meeting at which the rezoning decision was

made. Hence, this case is unlike *Wenderoth* v. *Freeze, Mayor,* 248 Ark. 469, 452 S.W.2d 328 (1980), upon which appellants rely, where we held that property owners were arbitrarily denied their right to present their objections to a reclassification to the Planning Commission.

Next appellants assert that the court erred in excluding from the evidence the answers to interrogatories given by the members of the City Board. The appellants sought to introduce the interrogatories and answers during the cross-examination of Speece. Although the interrogatories were placed in the record, they are not abstracted. The answers were neither placed in the record nor abstracted. The burden is upon the appellant to bring up a record sufficient to demonstrate that the trial court committed reversible error. *King* v. *Younts,* 278 Ark. 91, 643 S.W.2d 542 (1982); *SD Leasing* v. *RNF Corp.,* 278 Ark. 530, 647 S.W.2d 447 (1983). Appellants failed to meet their burden on this issue.

Finally appellants contend that the chancellor abused his discretion in refusing to grant them a continuance in order to subpoena the members of the City Board of Directors, after the chancellor refused to admit the interrogatories into evidence. Eight witnesses had testified at the time the appellants moved for a continuance. It is apparent from the record that they had ample opportunity to subpoena whomever they wished before the hearing. Pursuant to ARCP, Rule 40, the granting or denial of a continuance is a matter within the sound discretion of the court, and such a ruling will not be disturbed unless the trial court abused that discretion by acting arbitrarily and capriciously. *Bolden* v. *Carter,* 269 Ark. 391, 602 S.W.2d 640 (1980). Here, the chancellor did not abuse his discretion.

Affirmed.

HICKMAN, SMITH and PURTLE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. The majority has taken a rather passive role in this case and decided to uphold a decision by the Little Rock City Board of Directors which rezones five residential lots to a high commercial use,

thereby permitting the construction of a fast-food outlet, Wendy's, in the middle of a residential area. The only justification for the city's action can be that the lots are located not far from a commercial area on West Markham Street, which includes a McDonald's restaurant, an Exxon station and several other similar types of commercial enterprises. In my judgment this case represents a retreat to the city development approach approved in *City of Little Rock* v. *Pfeifer*, 169 Ark. 1027, 277 S.W. 883 (1925).

In my opinion the city's action was arbitrary for two reasons: First, this is clearly a case of spot zoning and therefore arbitrary; second, it is a flagrant breach of faith with the history of the area, the city's plan, and a decision this court made regarding this very property in 1966. *City of Little Rock* v. *Faith Evangelical Lutheran Church*, 241 Ark. 187, 406 S.W.2d 875 (1966). Furthermore, the only justification I can find for permitting the fast-food restaurant to be built is that the landowners want to make money and the enterprise will benefit the city economically by jobs. Neither is a legal justification for rezoning these lots.

> Spot zoning has been said to be invalid when it is primarily for the private interest of the owner of the property affected, and not related to the general plan for the community as a whole. 1 E. Yokley, ZONING LAW AND PRACTICE § 8-3 (1965).

*See Lindsey* v. *City of Fayetteville*, 256 Ark. 352, 507 S.W.2d 101 (1974); *Tate* v. *City of Malvern*, 246 Ark. 316, 438 S.W.2d 52 (1969).

There is a serious disagreement about the facts and their relative value in this case. But more important than that, and even this case itself, is the purpose of city planning, and our role, which is to keep the city honest. By and large the city of Little Rock has had good plans for the entire city. When the city has defended those plans against commercial assaults, we have, by and large, upheld them as we should have. *City of Little Rock* v. *Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1981); *Kirk* v. *City of Little Rock*, 275 Ark. 128, 628 S.W.2d 21 (1982). Just recently in two cases concerning the same area

of the city as this case, Hillcrest/Pulaski Heights, the city refused to retreat one iota from its plan. The request was to allow a small private school to be located in a residential area. *McMinn* v. *City of Little Rock,* 275 Ark. 458, 631 S.W.2d 288 (1982); *City of Little Rock* v. *Infant-Toddler Montessori School,* 270 Ark. 697, 606 S.W.2d 743 (1980). We had exactly the same situation in those cases that we have here: Nearby commercial enterprises which had been there for years, but no changes in recent years; and an existing comprehensive plan to protect a quiet residential area. Twice the city refused to rezone property to permit the school, although the evidence showed that it would not be a great disruptive factor to residents who wanted the peace and quiet of such a neighborhood. Now we have the same City Board of Directors deciding to place a fast-food restaurant in the middle of a residential area in violation of its own plan. While there are nearby commercial enterprises, not a single one has been added since our decision in *City of Little Rock* v. *Faith Evangelical Lutheran Church, supra,* made in 1966 regarding this very property. The McDonald's restaurant referred to was built on a lot already zoned for such a use. In *Faith Evangelical Lutheran Church,* we upheld the city's decision to protect this part of Markham Street used primarily as a residential area, and we upheld the city's refusal to allow any more commercial intrusions into this neighborhood. Actually the area allows a use for quiet business purposes but there was no objection voiced by any of the landowners of such a use; it was the prospect of a fast-food restaurant that raised their ire, as it should have. Who would want such a place next to their home? At best, they are intolerable; at worst, they are noisy, unsanitary, unsightly, bright at night, odorous, and attract large amounts of traffic. Such an enterprise is totally incompatible with single family residences. Such places do not close down at 5:00 p.m.; in fact, that is when they begin to reach one of their busiest periods, just when the next-door neighbors will arrive home to their haven from the noise, hustle and bustle of city life.

The majority does not address the question of whether this was spot zoning. It simply says Jerry Speece, Zoning Administrator for the city of Little Rock, testified that in his

opinion this was not spot zoning and not an incompatible use. He was wrong in both instances. (He conceded he did not participate in preparing the Hillcrest/Pulaski Heights Plan.) It is undisputed that the five lots are surrounded on three sides by residences. On the other side is Markham Street. It is a busy street, one of the avenues to funnel traffic to and from downtown Little Rock. But that alone cannot be a factor justifying rezoning. *See Lindsey* v. *City of Fayetteville, supra.* More importantly, West Markham is the southern boundary of Pulaski Heights/Hillcrest area, a residential area of uncommon beauty and serenity. There have been no changes in the area since 1966. It is an old residential area, improving in quality, not declining. In the *City of Little Rock* v. *Infant-Toddler Montessori School, supra,* we described this area as:

> . . . being a strong residential one where values are up instead of down and the property is well maintained. The area was described as one of the prime residential neighborhoods in the city which has been established for some 50 years and successfully sustained.

This part of Markham Street is a boundary that has to remain inviolate if the integrity of the Pulaski Heights/Hillcrest area is to be maintained. Several residents testified they had improved their residences next to this property, after our decision in 1966, relying on that decision that the area would not go commercial, but would remain primarily residential.

It is incredible that the zoning administrator said this was not spot zoning:

> Spot zoning amendments are those which by their terms single out a particular lot or parcel of land, usually small in relative size, and place it in an area, the land use pattern of which is inconsistent with the small lot or parcel so placed, thus projecting an inharmonious land use pattern. 1 E. Yokley, *supra,* § 8-3

> Spot Zoning . . . singles out a small parcel of land for use in a manner inconsistent with the other predom-

inant land uses in the area. R. Wright, *Zoning Law in Arkansas: A Comparative Analysis,* 3 UALR L.J. 421, 442 (1980).

These are perfect descriptions of what happened in this case. Why do cities spot zone property? "Such amendments are usually triggered by efforts to secure special benefits for particular property owners, without proper regard for the rights of adjacent owners." 1 E. Yokley, § 8-3. And that is what happened in this case. It is universally agreed that spot zoning is arbitrary. D. Hagman, URBAN PLANNING AND LAND DEVELOPMENT CONTROL LAW, § 93 (1975); 1 N. Williams, AMERICAN LAND PLANNING LAW, § 27 (1974); R. Wright, *supra,* at 442. In *Riddell v. City of Brinkley,* 272 Ark. 84, 612 S.W.2d 116 (1981), we said:

> Spot zoning, by definition, is invalid because it amounts to an arbitrary, capricious and unreasonable treatment of a limited area within a particular district. As such, it departs from the comprehensive treatment or privileges not in harmony with the other use classifications in the area and without any apparent circumstances which call for different treatment. Spot zoning almost invariably involves a single parcel or at least a limited area. R. Wright and S. Webber, *Land Use* (1978).

I would not hold the city's action arbitrary simply because the protestants were only allowed ten minutes to speak, but it is certainly an indication that the board had made up its mind. The majority says the board had been furnished with the record of two public hearings before the Planning Commission. I do not know that they had full knowledge of all the facts. All we know is the "minutes" of those hearings were furnished.

The staff of the city Planning Commission opposed this rezoning effort, as they should have, because it was contrary to a plan they had just adopted, the Heights/Hillcrest Plan, adopted in 1981. That plan was adopted by the city just months before the decision was made to rezone this property. In two meetings the Planning Commission could not agree

on the rezoning request and it was referred to the board to make the decision. It was approved unanimously after allowing the residents ten minutes to speak.

I do not suggest we substitute our judgment for that of a city in a rezoning matter. In the distant past we have done so with regularity. M. Gitelman, *Judicial Review of Zoning in Arkansas*, 23 ARK. L. REV. 22 (1969). In the recent past we have, in my judgment, rather consistently applied the principle of appellate review that we should have, and that is only to determine if the decision by the city was arbitrary. *McMinn* v. *City of Little Rock, supra; Riddell* v. *City of Brinkley, supra; City of Little Rock* v. *Infant-Toddler Montessori School, supra.* We have even abandoned the *Pfeifer* rule. *City of Little Rock* v. *Breeding, supra; City of Conway* v. *Conway Housing Authority,* 266 Ark. 404, 584 S.W.2d 10 (1979). But that does not mean we should go to the other extreme and meekly accept whatever the city does as right in zoning cases, because there is always strong pressure on city boards to make exceptions. There is money to be made and such motives have no social conscience. When a city makes an exception it ought to be clearly justified. The most important goal of a city in planning should be the quality of life it affords its residents. Commercial and residential interests can both be served and flourish, but only through good planning and sticking to it. In this case, Wendy's can be built somewhere else in an authorized commercial zone, and no damage will be done to commercial or residential interests.

I hope the board's decision in this case is a mere aberration; just as I hope the majority's decision is not a step backwards toward *Pfeifer*. But neither hope will change the fact that a breach has been made in the wall that has protected this neighborhood and that breach can only result in the destruction of the use of the adjoining property for single family residences. It will not be fit for such a purpose anymore.

GEORGE ROSE SMITH and PURTLE, JJ., join in this dissent.