CITY OF LITTLE ROCK *v.* Gerald L. BREEDING
and John Michael HENDERSON

80-256                                    619 S.W. 2d 664

Supreme Court of Arkansas
Opinion delivered July 20, 1981

438

*R. Jack Magruder, III*, City Atty., by: *Carolyn B. Witherspoon*, for appellant.

*Wright, Lindsey & Jennings*, for appellees.

Sidney H. McCollum, Special Justice. This is a zoning case wherein the appellees are owners of a certain tract of land located at the southeast corner of Rainwood Drive and Green Mountain Drive in western Little Rock, Arkansas.

This tract was annexed to the City of Little Rock a few years ago and by reason of such annexation the tract was by operation of city ordinance placed into "A" One-Family zoning district.

On January 29, 1979, the appellees filed an application with the Planning Commission of the City of Little Rock to rezone the property from "A" One-Family to "F" commercial district. The director and staff of the planning commission reviewed the application and made a recommendation and on February 27, 1979, a hearing was held by the commission at which the commission voted to deny the application. On May 1, 1979, the Board of Directors of the City of Little Rock refused to pass an ordinance granting the appellees' application for rezoning. Thereafter, appellees filed suit in Chancery Court wherein the Chancellor found: (1) that the property involved was located in an established and expanding business district; (2) that the Board of Directors acted in an arbitrary, capricious and unreasonable manner in rejecting appellees' application; and (3) the Court went on to decree:

"THEREFORE, the said property is hereby rezoned to "F" Commercial District under the Comprehensive Zoning Ordinance of the City of Little Rock which was in effect on May 1, 1979."

The City of Little Rock appealed the Chancellor's decision to the Court of Appeals. There the Chancellor was affirmed. [*City of Little Rock* v. *Breeding*, 270 Ark. 752, 606 S.W. 2d 120 (Ark. App. 1980).] This court granted certiorari because of the issues and legal principles involved.

Appellant urges three points for reversal of the Chancellor's decision: (1) the trial court erred in finding that the appellees' property was located in an established and expanding business district; (2) the trial court's finding that the decision of the Little Rock Board of Directors in denying the appellees' request for rezoning was arbitrary, capricious and unreasonable is contrary to the preponderance of the evidence; and (3) the trial erred in rezoning the property directly by decree.

The property in question is located on the southeast corner of the intersection of Rainwood Drive and Green Mountain Drive approximately two blocks south of Rodney Parham Road in western Little Rock. The property to the west of the property in question, which is across Green Mountain Drive, is presently zoned and is being used for apartments. These apartments begin some two blocks north of this site at Rodney Parham Road and cover all the property down Green Mountain Drive to the site in question and then a little over a block south of the site. The area is actually made up of three different apartment complexes containing more than 700 apartment units.

To the south of the site and immediately adjacent to it, is a parcel of land which has been developed as a mini warehouse complex, which actually consists of small storage units used for storage of personal property. To the east of that property and abutting the southeast corner of the property in question is a continuation of these storage units which are used primarily for the storage of boats of residents in the nearby apartment complex. Although this property was brought into the city with a non-conforming use existing on the property, it actually is zoned as "A" One-Family. The parties have agreed that it would be more correctly classified as "I" Light Industrial. Immediately south and adjacent to the mini warehouse development is a single family dwelling which has been converted to a day care center for the keeping of children. South of that down Green Mountain Drive are several blocks of single family dwellings or other residential developments.

Immediately east of the site in question is a tract of land that runs approximately a half a block down Rainwood Drive and said tract is zoned "A" One-Family but is vacant. Just east of this adjoining tract is a vacant tract of land that finishes out the block on Rainwood Drive which is zoned "F" Commercial. East of that is a tract of land that is approximately a city block square wihch is zoned as "G-1" Commercial but which is vacant and undeveloped.

Immediately north of the subject property is a tract of land of approximately six acres which is zoned "G-1"

Commercial. Actually this is a large tract of land that runs from Green Mountain Drive all the way over to Merrill Drive, or a long city block east and west, and continues up to just south of Rodney Parham Road, which is a distance of approximately two city blocks. The entire west half of this tract although zoned "G-1" has been developed with condominiums or residential type of development. This residential development occupies slightly under half of the block fronting on Green Mountain Drive across the street from the site. The remainder of that tract, most of which is directly north of the site, is vacant. Just north of this site is a "planned unit development" which is owned by the appellees and is planned for a "planned commercial development" made up of commercial and residential properties. At the present time it is vacant.

Immediately north of this tract is a small tract which is zoned "A" One-Family but is being used as commercial development which contains a convenience store, dry cleaners, liquor store and perhaps other small shops. This is located several hundred yards from the site and perhaps as much as two normal city blocks away from the site.

It is well-settled that when we review the decree of the Chancery Court, said decision or holding will be affirmed when the holding is not clearly against the preponderance of the evidence. *Rule 52, of the Arkansas Rules of Civil Procedure; See also: Charles M. Taylor* v. *City of Little Rock et al*, 266 Ark. 384, 583 S.W. 2d 72 (1979). However, the question before the Chancellor when a zoning action of the city is challenged is solely whether or not the City acted arbitrarily, capriciously or unreasonably. It has been well-established that such zoning decisions of the city are legislative in nature and that the State Legislature gave to the cities the power of comprehensive planning in classifying the various areas of the city in proper zones. Ark. Stat. Ann. § 19-2804, *et seq.*, and § 19-2825.

In *City of Batesville* v. *Grace*, 259 Ark. 493, 594 S.W. 2d 224 (1976), this court pointed out the limited function to be exercised by the Chancellor in zoning cases such as this. In reviewing the Chancellor's decision that the City Council's

action was arbitrary and capricious, the court pointed out:

"Let it be remembered that this is not an ordinary equity case, but rather involves only the chancellor's function in determining whether the City's action in granting, or denying, rezoning was or was not arbitrary, capricious, and unreasonable. In *City of Little Rock* v. *Parker*, 241 Ark. 381, 407 S.W. 2d 921, this court said:

'The right and responsibility for classifying the various areas in the city are with the zoning authorities, and their decision will only be disturbed if it is shown that they acted arbitrarily. (Citation omitted.)

"The sole question before this court on appeal is, 'Did the preponderance of the evidence before the Chancellor show that the city acted arbitrarily in refusing to rezone the properties here at issue ...?' While the word, 'arbitrary,' has several definitions, probably the most generally accepted one is, 'arising from unrestrained exercise of the will, caprice, or personal preference; based on random or convenient selection or choice, rather than on reason or nature.' (Webster's Third New International Dictionary, 1961.)'

Likewise, in *Tate* v. *City of Malvern*, 246 Ark. 316, 438 S.W. 2d 53, we stated:

'We recently had occasion to recount some fundamental rules of law applicable generally to zoning case. (Citation omitted.) The burden is on the landowner to preponderately show, at the trial level, that the action of the city was arbitrary; on appeal we determine whether the trial court's finding was contrary to a preponderance of the evidence; home owners who have relied on residential zoning are entitled to consideration and the use of a particular tract may be reasonably restrained so as not to cause them injury; and rezoning cannot be justified solely

on the ground that it is necessary to put a particular tract to its most remunerative use.'

This court has ruled that judicial intrusion upon this legislative prerogative violates the constitutional requirements of separation of powers. *Wenderoth* v. *City of Fort Smith*, 251 Ark. 342, 472 S.W. 2d 74. In *Wenderoth*, the court held unconstitutional a statute that purported to give landowners the right of *de novo* trial in circuit court, as a mode of appeal from municipal building and zoning decisions. The court's holding in *Wenderoth* is relevant to this appeal:

'Therefore, when a city exercises the power conferred upon it by our state legislature, the city is acting in a legislative capacity which is co-equal with the power of the legislature itself. *Little Rock Ry. & Elec. Co.* v. *Dowell*, 101 Ark. 223, 142 S.W. 165 (1911). There we said that when a municipality exercised the delegation of this legislative authority, the courts cannot take away the discretion vested in the city's legislative body.

\* \* \*

'... By this method of appellate review *de novo* there is attempted to impose upon the circuit court a function of a nonjudicial character in a matter that is exclusively within the discretion and legitimate power of the city's legislative body. The result would be to substitute the judgment of the circuit court for that of a municipal law-making body. This is contrary to Article 4 of our constitution which prohibits intrusion by the judiciary upon the legislative domain.

\* \* \*

'However, zoning regulations and ordinances are not immune to appellate review. Our chancery courts have the power to grant relief in appropriate proceedings when a zoning ordinance is arbitrary,

capricious, or unreasonable. (Citations omitted.) On this restricted basis our chancery courts have reviewed the validity of zoning ordinances. In other words, the enactment of zoning ordinances is a legislative function subject only to appellate review to determine whether the city's legislative body acted arbitrarily, capriciously, or unreasonably in the enactment of the ordinance.

It has also been well-established that there is a presumption that the city board or legislative body acted in a reasonable manner when they either zone or refuse to zone property and the burden is on the landowner to show otherwise. *Economy Wholesale Co., Inc.* v. *Rogers*, 232 Ark. 835, 340 S.W. 2d 583 (1960); *Lindsey* v. *City of Fayetteville*, 256 Ark. 352, 507 S.W. 2d 101 (1974).

In *Little Rock Ry. & Elec. Co.* v. *Dowell*, 101 Ark. 223, 227, 142 S.W. 165, 166 (1911) the court said:

"It is only an arbitrary abuse of the power which the courts should control; and when the exercise of that power and discretion is attacked in the courts, a presumption must be indulged that the council has not abused its discretion, but has acted with reason and in good faith for the benefit of the public. To proceed upon any other theory would be to substitute the judgment and discretion of the court for the judgment of the members of the council with whom the lawmakers have seen fit to lodge this power."

From the above citations, we can see that the only question before the Chancellor in this case was whether or not the City Board had acted arbitrarily, capriciously, or unreasonably. To state that in another way, the question is whether there was any reasonable basis upon which the Board could base its ruling or decision. If the Board acted reasonably or had any reasonable basis for sustaining the decision that was made, then its decision should be upheld regardless of whether or not the Chancellor, or this court, agrees with that decision or determines that it is wise or unwise or it is or is not supported by the greater weight of

evidence. The decision of what is best for the city or how the city will rezone has been left to the City Council.

The Chancellor in determining that the City's actions were arbitrary and capricious, relied largely, if not wholly, upon this court's decision in the case of *Little Rock* v. *Pfeifer*, 169 Ark. 1027, 277 S.W. 883 (1925). This was the case that established the so-called *Pfeifer Rule* wherein the court stated:

> "We are of the opinion that the evidence establishes very clearly and beyond controversy that the locality in question is a business district which has been well established and which is now expanding, the expansion having reached the point where appellees are constructing their building. There is substantial evidence tending to show that the value of some of the adjacent residence property will be depreciated on account of the lessening of the usable value of the property for residence purposes, but we do not think that this affords justification for interfering with the gradual expansion of the business district, which has already been established. As the size of the business district grows, it ceases to be a residence district to the extent within the purview of the zoning ordinance, and any attempt on the part of the city council to restrict the growth of an established business district is arbitrary. When a business district has been rightly established, the rights of owners of property adjacent thereto cannot be restricted so as to prevent them from using it as business property."

It has been pointed out in earlier decisions but should be mentioned here, that at the time the *Pfeifer* decision was handed down the concept of zoning and of zoning ordinances was in its infancy.

The enabling act was Act 6 of the second extraordinary session of the General Assembly of 1924. This act only set up three zoning classifications, one for manufacturing, one for business, and one for residential property. At this time there was no concept of long range planning or large scale plans

for cities on the basis of districts. Act 186 of 1957 authorized cities to adopt and enforce plans ...

"for the coordinated, adjusted, and harmonious development of the municipality and its environs."

This act, in effect, allowed municipalities to plan the development and growth of their cities in accordance with their future needs, safety, morals, order, etc., and thereby provide for the general welfare of the citizens. It gives the cities the power to determine the best manner and place for the various zones to be located in the city for the good of all, and to control development in any one kind of zone, and also, to provide buffer zones and blending zones so that various uses of land will not conflict one with the other. The *Pfeifer Rule* is in direct conflict with these modern planning practices and zoning theories and if followed literally would frustrate any attempt to control commercial development and keep it within a specific zone. In *Baldridge* v. *City of North Little Rock*, 258 Ark. 246, 523 S.W. 2d 912 (1975), this court stated ...

"We are, therefore, of the opinion that residentially zoned property which happens to be adjacent to business zoned property is not automatically entitled to rezoning as business property as a matter of law under *Pfeifer*. To hold otherwise would be illogical and could easily defeat the entire purpose of municipal zoning, in that a string of business establishments could be driven through any residential neighborhood by the simple process of touching each other. Such is not the intent of the zoning law and such is not the intent of the so-called "Pfeifer Rule.""

Also, in other cases this court has restricted, limited and modified the holding in *Pfeifer*. In *City of Little Rock* v. *Parker*, 241 Ark. 381, 407 S.W. 2d 921 (1966), Chief Justice Harris stated:

"It is apparent that the passage of Act 186 of 1957, to some degree necessarily modified our holding in *Pfeifer*, for a strict and literal interpretation of all of the

language in that case would certainly result in nullifying the effort by a city to coordinate development of lands, and more than that, in effect, would nullify Act 186. The right and responsibility for classifying the various areas in the city are with the zoning authorities, and their decision will only be disturbed if it is shown that they acted arbitrarily. *Lindsey* v. *City of Camden*, 239 Ark. 736, 393 S.W. 2d 864."

The fact that residential property next to business property is not automatically entitled to be rezoned as business or commercial was recently affirmed by this court in *City of Conway* v. *Housing Authority of City*, 266 Ark. 404, 584 S.W. 2d 10 (1979), where the court stated . . .

"Residential property which is adjacent to business zoned property is not automatically entitled to rezoning as business property. This is so even though the highest and best use of the property might be other than residential. To allow such rule would be to violate the zoning act itself. If we were to allow any property abutting business property to be rezoned as business property, there would be no need of a zoning ordinance in the first place. We have stated too many times to mention that the court should sustain the city's action in zoning matters unless it is found that the municipality was arbitrary in setting up the ordinance."

From these decisions it can be seen that in light of modern planning and zoning practices, *Pfeifer* now has very limited applicability and little if any validity. The power to plan and zone given to the cities by Act 186 of 1957 is not to be limited or restricted by court-made automatic rules about the nature of adjacent land. Such power is balanced and checked only by a review of the cities' actions, by examination of all the surrounding facts and circumstances to determine whether such actions were arbitrary, capricious or unreasonable.

Even if *Pfeifer* can be validly applied in certain limited circumstances, it does not apply in the case at bar. The preponderance of the evidence presented below shows the

land in question is not *adjacent* to an *existing* and *expanding* business district.

The property to the northwest, west and southwest of the subject property is zoned for and being used as residential property and is developed with more than 700 apartments. Immediately east of the subject property is a tract of land several hundred feet or about half a block long which is zoned "A" One-Family residential. It is vacant and undeveloped. To the immediate south and partly on the eastern boundary is an area zoned "A" One-Family but agreed by both parties should be classified as "I"-Light Industrial. This tract is actually occupied by some mini warehouses or small storage units for the persons in the adjacent and nearby residential area. There is a single-family dwelling to the south of the storage units that has been converted for use as a day-care center and which is a non-conforming commercial use of "A" One-Family residential property. None of this surrounding land can be considered a "business district" as that term was used in the *Pfeifer* case.

The land to the north and northwest across Rainwood Drive from the subject property is zoned "G-1" Commercial but is mostly vacant and has not been developed commercially. The only development at all on the property is the construction of condominiums over most of the west half of the property which is about one block wide and about two blocks long running north almost all the way to Rodney Parham Road. On the remaining vacant portion of the property, the evidence showed that roadways and cul-de-sacs have been constructed indicating more residential or quiet business development.

Therefore, there is no actual commercial development on any property adjacent to the subject property. Also, it is apparent that a large part of the commercially-zoned land in the vicinity is vacant and undeveloped. Certainly there is no established and expanding business district adjacent to appellees' land.

Appellees argue that the court should consider a large

65 acre district lying mostly to the northeast of the property, some of which is almost a half mile away and none of which is adjacent to the subject property. We know of no authority that permits such a far-ranging comparison. Appellees and the court below ignore the fact that the large condominium development immediately northeast of the subject property cuts off or buffers the commercial development along Rodney Parham and further east from the subject property.

In each of the cases cited by appellees to support the application of the *Pfeifer* rule to this case, there was far more evidence of existing business buildings and districts which were clearly expanding business or commercial districts than has been shown in this case. In *Metropolitan Trust Company* v. *City of North Little Rock*, 252 Ark. 1140, 482 S.W. 2d 613 (1972), the court did refer to adjacent land across the intersection as being zoned commercial. However, the other facts in that case clearly show the court was dealing with an existing and expanding business district. There the land in question was the southwest quadrant of the intersection of Highway 67-167 and McCain Boulevard, two primary traffic arteries carrying up to 20,000 cars per day and projected to carry as much as 90,000 cars per day. Across the boulevard from the property in question, the largest regional shopping center in the state, covering more than 50 acres, was under construction. Even the land being rezoned had been used as commercial land before it had been annexed to North Little Rock. All these facts were in addition to the fact that the other quadrants were zoned commercial. There was far more evidence of an existing and expanding business district in the *Metropolitan Trust* case than in the case at bar. The same is true for *City of Blytheville* v. *Thompson*, 254 Ark. 46, 491 S.W. 2d 769 (1973), and *City of Little Rock* v. *McKenzie*, 239 Ark. 9, 386 S.W. 2d 697 (1965).

The decision of the chancellor that the property of appellees was adjacent to an existing and expanding business district is against the preponderance of the evidence and he erred in so holding.

The question now is, were the actions of the City Board

arbitrary, capricious or unreasonable separate and apart from any *Pfeifer* considerations. After reviewing all of the evidence, we cannot say that the Board's actions were without reasonable basis.

Appellees argue that the Board was unreasonable and arbitrary in failing to recognize the highest and best use of the property was for commercial purposes. However, the only testimony given as to the highest and best use applied in large part to economic benefits to be gained from the property, as opposed to the most appropriate or compatible zoning unit in which to place the property. When the witnesses were cross-examined as to whether it was technically feasible or physically feasible to develop the property as multifamily, residential, or quiet business, they agreed that it could be done, but it would not be economically feasible. It has been well-established that rezoning cannot be justified solely on the grounds that it is necessary to put a tract of land in its most remunerative use. *Tate* v. *City of Malvern*, 246 Ark. 316, 438 S.W. 2d 52 (1969);*Lindsey* v. *City of Fayetteville*, 256 Ark. 352, 507 S.W. 2d 101 (1974).

Appellees contend that although the report of the planning staff on the subject property found: (1) no issue exists relative to street right-of-way and traffic considerations, (2) no expressions regarding standards of quality, (3) no effect on public finance, (4) no adverse impact expected on utilities, (5) no adverse impact on public services, (6) no opposition from the neighborhood, and (7) no effect on environs, the Commission and Board refused to allow rezoning to "F" commercial. This, they say, shows the Board was acting according to its own personal preference not based on reason and therefore it is arbitrary and unreasonable. However, appellees fail to point out that the report goes on to say:

"In the opinion of the staff, this general area of the city is grossly overzoned. Indicated by the lack of development already appropriately zoned commercial. Staff also feels that zoning this property commercial will commit to further encroachment into the residential portions of the neighborhood."

This forms the basis for the City's actions and its theory or justification for its plan is further explained in the testimony of appellant's witnesses. They stated that the City's plan for the area designated the property in question to be zoned as quiet business or multifamily residential. They also stated there was a need for such development and they had determined a trend in the area whereby property was being developed for multifamily purposes or quiet or garden-type business purposes, regardless of the fact that much of it was zoned commercial.

They also testified that the area had been over-zoned commercially, meaning that more property had been designated for commercial use than was actually needed or used.

The City's witnesses further stated that the most compatible and most appropriate zone for the property was medium density residential or quiet business. This type zone would help blend or "stage downward" from the commercial development on Rodney Parham to the residential to the south of the subject property. Also, this zone would fit in if the trend to develop commercially zoned property as condominiums or quiet business continued in the area.

This theory is supported by the large amount of vacant commercially zoned property in the area, and by the way the property immediately north and northeast of the subject property has been developed. It is further supported by the undisputed testimony that the only recent developmet in this area was an office building being built on commercially zoned property and some condominiums being built on Green Mountain Drive south of this property.

We cannot say that this theory of planning or zoning is without reasonable basis. It is in fact supported by physical facts. Although there was much evidence supporting appellees' request, it is not for the Chancellor or this Court to weigh these arguments as to which is best or more convincing. That power and duty has been given to the City so long as it does so with reason and not arbitrarily.

In this case the planning staff reviewed the application and submitted its report recommending that the rezoning not be granted because of the overzoning situation and the rezoning of the property to "F" commercial would have a detrimental effect on the developing trend to use the land in the area as multifamily use or as office and quiet business use. Then the planning commission held a hearing allowing the landowners to present their side of the issues and after deliberation voted not to grant the rezoning. Finally, the City Council held a hearing and heard the recommendations of the staff and the commission as well as statements by attorneys for the landowners and voted not to grant the rezoning. The preponderance of the evidence indicates that there was reasonable basis for their decision and as such it was not arbitrary and capricious. The Chancellor was in error in so holding.

The final ground for appeal stated by the appellants was that the Court by decree rezoned the property to "F" Commercial. As we have previously pointed out, the Legislature gave the rezoning power to the City Council or legislative body of the City and it is not within the province of the court to rezone property. See *City of Batesville* v. *Grace*, 259 Ark. 493, 534 S.W. 2d 224 (1976), and also see *City of Conway* v. *Housing Authority of City*, 266 Ark. 404, 584 S.W. 2d 10 (1979) where the court said . . .

> "Courts are not super zoning commissions and have no authority to classify property according to zones."

An injunction is the only proper action for the Chancellor to take in such a situation. Placing the property in a specific zone is beyond the Court's power.

In accordance with what has been said, the action of the City Council in refusing to rezone the property to "F" Commercial was not arbitrary and capricious or unreasonable, and the Decree should be and hereby is reversed.

IT IS SO ORDERED.

HAYS, J., not participating.