Robert J. RICHARDSON *v.* CITY OF LITTLE ROCK
PLANNING COMMISSION

87-194                                                      747 S.W.2d 116

Supreme Court of Arkansas
Opinion delivered April 4, 1988
[Rehearing denied May 9, 1988.*]

---

*Hickman, Hays, and Newbern, JJ., would grant rehearing.

*Ivester, Henry, Skinner & Camp*, by: *David P. Henry*, for appellant.

*Mark Stodola*, City Att'y, by: *Patricia K. Benton*, for appellee.

JOHN NORMAN HARKEY, Special Justice. The Little Rock Planning Commission disapproved a subdivision application submitted by Robert Richardson. An appeal of this decision to circuit court was unsuccessful. The circuit judge concluded that certain technical violations (which presumably would have been corrected in the final plat) were not the basis for the denial, and then ruled that the Commission had discretionary authority to disapprove.

This is a case of first impression in Arkansas, insofar as it relates to the discretionary authority of planning commissions, and that it is a difficult case is evidenced by the division among members of this court.

The issue is whether a planning commission has discretionary power to disapprove a subdivision plat which meets minimum requirements set forth in the subdivision ordinance.

Article 2, Section 22, of the Arkansas Constitution, provides that the right of property is before and higher than any other constitutional sanction. This does not mean, however, that an individual is constitutionally guaranteed the right to do with such property as he or she wishes in all circumstances. Obviously, the police power and health and welfare doctrines clearly permit restrictions on property use so as to prevent detriment to the

rights of the public. *McCammon* v. *Boyer*, 285 Ark. 288, 686 S.W.2d 421 (1985). We have frequently held that the private use of property can be restricted by zoning regulations. *See, e.g., Winderoth* v. *City of Fort Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971).

■■ A planning commission is not a legislative body but functions in an administrative capacity and derives its authority from the legislature. *City of Paragould* v. *Leath*, 266 Ark. 390, 583 S.W.2d 76 (1979); and *Arkansas Power and Light Co.* v. *City of Little Rock*, 243 Ark. 290, 420 S.W.2d 85 (1967). The enabling legislation, Ark. Code Ann. § 14-56-417 (1987), provides in pertinent part:

> Following adoption and filing of a master street plan, *the commission may prepare and shall administer, after approval of the legislative body, regulations controlling the development of land* . . . . The regulations controlling the development of land may establish or provide for the minimum requirements as to information to be included on the plat filed for record; the design and layout of the subdivision, including standards for lots and blocks, street rights of way, street and utility grades, and other similar items; the standards for improvements to be installed by the developer at his own expense, such as street grading and paving, curbs, gutters and sidewalks, water, storm and sewer mains, street lighting and other amenities. [Emphasis added.]

Once the Planning Commission has exercised its authority in drafting regulations pertaining to subdivision development, it is bound by those regulations and "shall administer" them. The Commission is guided by standards which can be uniformly applied and which give notice to subdividers of the minimum requirements with which they must comply in order to obtain approval. *Smith* v. *City of Mobile*, 374 So. 2d 305 (Ala. 1979).

■ We agree with the appellant that the Planning Commission exceeded its authority when it denied approval of the preliminary plat on considerations other than the minimum standards set forth in the subdivision ordinance.

When a subdivision ordinance specifies minimum standards

to which a preliminary plat must conform, it is arbitrary as a matter of law to deny approval of a plat that meets those standards. *Odell* v. *City of Eagan*, 384 N.W.2d 792 (Minn. App. 1984). Accordingly, if the plat is within the use permitted by the zoning classification and meets the development regulations set forth in the subdivision ordinance, then the plat by definition is in "harmony" with the existing subdivisions.

A primary purpose of these provisions is to ensure that a landowner's plat will be objectively measured against the concrete standards of the subdivision ordinance in effect. Thus, these provisions balance the interests of planned community growth with the private rights of landowners. *Reynolds* v. *City Council of Longmont*, 680 P.2d 1350 (Colo. App. 1984); *RK Dev. Corp.* v. *City of Norwalk*, 156 Conn. 369, 242 A.2d 781 (1968); and *Dosmann* v. *Area Plan Comm'n of St. Joseph County*, 160 Ind. App. 605, 312 N.E.2d 880 (1974).

The record clearly demonstrates that appellee denied approval of the plat based upon considerations not authorized by the ordinance. Pursuant to the subdivision ordinance Section 37.14(e)(3), appellant received a letter setting forth two reasons for denial: (1) Proximity of a proposed cul-de-sac to the adjacent lots and (2) Marginal development potential of the land, resulting in unusual lot shapes and means for access. The final plat submission from which appellant appeals does not contain a cul-de-sac, and the subdivision ordinance does not contain the term "marginal development potential." In fact, there is testimony to the effect that the term "marginal development potential" was formulated ad hoc as a reason for denying appellant's plat.

■ In short, a planning commission may not disregard the regulations set forth in the subdivision ordinance and substitute its own discretion in lieu of fixed standards applying to all cases similarly situated. *RK Dev. Corp.*, 156 Conn. 369, 242 A.2d 781. A planning commission is authorized and required to determine whether a plat presented is in compliance with the particular subdivision regulations. Once compliance is had, no discretionary power to disapprove exists. To rule otherwise would sublimate objective requirements, and instead substitute subjective thinking by individual members of a particular planning commission. This was never contemplated by the law.

We reverse.

GLAZE, J., concurs, HICKMAN, DUDLEY and NEWBERN, JJ., dissent, HAYS, J., not participating.

TOM GLAZE, Justice, concurring. I concur with the majority opinion holding that the Little Rock Planning Commission lacks discretion to deny approval of a subdivision plat which meets the minimum requirements set forth in the subdivision ordinance.

The trial court found that technical violations listed by the planning commission were not the basis for its denial of the Forest Hills preliminary plat but that the commission was concerned about the location of the access street in close proximity to the rear of the lots in Robinwood. The court held that the commission has discretion to consider such circumstances even though the street location otherwise complies with the minimum requirements set forth in the subdivision ordinance.

The dissent confuses the issue by arguing that Mr. Richardson has failed to meet certain minimum requirements set forth in the ordinance and that the majority ignored that fact. Not true. Neither the majority's nor my concern is with whether technical violations exist, for all agree that the requirements must be met before the final plat is approved. As already noted above, correcting those violations is implicit and mandatory under the trial court's decision. However, that is not the part of the trial court's decision with which the majority and I disagree. Rather, our concern is with the trial court's holding that the planning commission has discretion to deny the approval of a plat even if it complies with the minimum requirements set forth in the ordinance.

Unquestionably, the commission has wide discretion under Arkansas's state municipal planning laws and those subdivision ordinances enacted to control, regulate and develop land. In this respect, the commission here had discretion in enacting the extensive underlying requirements contained within the subdivision ordinance and in determining whether a plat submitted for its approval is in compliance with that ordinance. But this discretion is not unlimited. Any discretion the commission may have cannot be construed so broadly as to permit the commission

to inject ad hoc requirements at its fancy.

Indeed this is precisely what occurred. In his dealings with the planning commission, Mr. Richardson went through five plat revisions in an attempt to comply with the subdivision ordinance. He eventually submitted plats, option A, which contained no cul-de-sac, and option B, which omitted the cul-de-sac. Both plats were denied. Mr. Richardson appealed only the denial of option A, which except for certain technical violations, met the requirements of the subdivision ordinance.[1] The commission, by letter, still denied Richardson's final plat (option A); its reasons were (1) proximity of proposed cul-de-sac to the adjacent existing lots and (2) marginal development potential of the land resulting in unusual lot shapes and means for access.

The subdivision ordinance in no way mentions the term "marginal development potential," and obviously is a new term or condition coined by the commission for this particular subdivision. How can applicants meet such subjective and new criteria without looking to some objective, reasonable and uniform standards provided by the commission?

In short, the commission simply cannot disapprove an applicant's plat on a whim. Clear reasons for denial, stemming from the subdivision ordinance, must be given by the commission, so an applicant will be afforded an informed and reasonable opportunity to meet the requirements expected of the applicant. This, too, provides an objective standard by which the courts, when called upon, can review commission decisions.

Once again, the majority's decision does not change the fact that the final plat submitted for approval must conform to the requirements set forth in the ordinance. What the decision does do, however, is restrict the planning commission's power to deny approval of a plat on an arbitrary basis. Mr. Richardson should have his plat accepted or denied on the basis of uniform standards applied equally to those similarly situated. To hold otherwise subjects each developer to evershifting standards, never knowing

---

[1] Again, to avoid any misunderstanding, I reiterate the point — which is also made by the majority — that Richardson must correct those noncompliances with the requirements of the subdivision ordinance, unless, of course, those violations are waived.

the extent of his or her property rights.

DARRELL HICKMAN, Justice, dissenting. This is a case of a private developer who bought land on a steep hillside in west Little Rock not suitable to easy development and then refused to change his plan because it would cost him money. The commission decided that until he met their requirements it would not be an acceptable subdivision. It is our duty to review the evidence in the light most favorable to the appellee and affirm the judgment if there is any substantial evidence to support it. *Rhea* v. *Harris*, 293 Ark. 271, 737 S.W.2d 626 (1987). Furthermore, it is our duty to affirm an administrative agency's decision unless it is arbitrary. *See Green* v. *Carder*, 282 Ark. 239, 667 S.W.2d 660 (1984). There is no suggestion the decision was arbitrary. Using this formula, this case should be affirmed.

The majority states the issue is whether a planning commission has discretionary power to disapprove a subdivision plat which meets minimum requirements of a subdivision ordinance; but the majority ignores the fact that the appellant's plan does not comply with the minimum requirements. The street does not meet the minimum requirement for adequate site distance on a curve. The side lot lines were not at right angles with the street as required by the subdivision ordinance. There was also testimony offered that one of the lots was more than three times as deep as it was wide, which is prohibited by the ordinance. Richardson, the developer, admitted that there were inconsistencies between the plat and the subdivision ordinance requirements; yet he blindly contends that he was in strict and total compliance with the ordinance. There was testimony offered that the nonconformities in the plat could be corrected at the final platting time. However, Richardson's own witness said that he did not know whether the changes could still be made and allow for the 15 lots Richardson insists on having in the subdivision. Richardson stated that he did not want to reduce the number of lots from 15 to 12 because "they stood to lose $100,000 to $150,000." There was also testimony offered that the development would cause erosion in adjacent Robinwood Subdivision and depreciation of the value of some of the homes in Robinwood.

The commission is authorized to consider the proper drain-

age and any adverse impact on adjoining properties in deciding whether to approve a preliminary plat. For example, the subdivision ordinance specifies that its purpose is:

> To protect and provide for the health, safety and general welfare of the public.

> To protect and conserve the value of buildings and improvements, and to minimize adverse impact on adjoining or nearby properties.

> To establish a beneficial relationship between the uses of land and buildings, and the municipal street system; to require the proper location and design of streets and building lines; to minimize traffic congestion; and to make adequate provision for pedestrian traffic circulation.

> To encourage the wise use and management of natural resources; to provide adequate and safe recreational areas; to maintain the natural beauty and topography of the municipality and to ensure appropriate development with regard to these natural features; to minimize the pollution of air, ponds and streams; to ensure the adequacy of draining facilities.

Little Rock, Ark., Code of Ordinances § 37-2 (1978).

Both the appellant and majority rely on several cases for the rule that a planning commission does not have the discretion to deny a plat when it complies with all the technical requirements of the ordinance. First, those cases do not apply because the plat did not comply with the subdivision ordinance requirements. Next, that bold statement is a distortion of the law. The planning commission clearly has some discretion under the ordinance. If it had no discretion or could use no judgment, then there would be no need for a planning commission. The planning commission would consist of a single bureaucrat who could stamp a yes or no on a developer's plan.

A commission uses discretion, for example, when a variance is granted. The subdivision ordinance addresses this specifically:

> Where the planning commission finds, however, that extraordinary hardships or practical difficulties may result from strict compliance with these regulations, or the

purpose of these regulations may be served to a greater extent by an alternative proposal, it may approve variances to the subdivision regulations so that substantial justice may be done and the public interest secured.

Little Rock, Ark., Code of Ordinances § 37-10.

Surely the commission has the discretion to consider the lot shapes in deciding whether to approve a preliminary plat. The ordinance specifically provides:

The size, shape and orientation of lots shall be appropriate for the location of the subdivision and for the type of development and use contemplated.

Little Rock, Ark., Code of Ordinances § 37-24.

The Ordinance also gives the commission the discretion to consider the means for access and location of streets. It provides:

Particular attention shall be given to width, arrangement and location of streets; utility easements; drainage; lot sizes and arrangements; and other facilities such as parks, playgrounds or school sites, public buildings, public areas and arterial streets; and the relationship of the proposed subdivision to adjoining, existing, proposed and possible subdivision of lands.

Little Rock, Ark., Code of Ordinances § 37-14.

It also states:

All streets shall be constructed in accordance with applicable City of Little Rock standards and specifications as provided in the master street plan of the City of Little Rock or other such standards and specifications adopted by the board of directors.

Little Rock, Ark., Code of Ordinances § 37-34.

Undoubtedly, the ordinance intends for the planning commission to take into consideration the location and arrangement of streets, the lot sizes and arrangements, as well as "the relationship of the proposed subdivision to adjoining, existing, proposed and possible subdivision of lands."

The trial judge found that the technical violations of the

ordinance were not the basis of the planning commission's denial of the plat, but that the commission had discretion to deny a plat. However, the non-compliance with the ordinance certainly led to the unusual lot shapes and means for access which the planning commission gave as one of the reasons for denying the plat.

The commission gave two reasons for the denial of the appellant's plat: "(1) proximity of [the] proposed cul-de-sac to the adjacent, existing lots and (2) marginal development potential of the land, resulting in unusual lot shapes and means for access." The appellant submitted two plats; one plat had a cul-de-sac and one did not. Both the appellant and the majority opinion focus on the term "marginal development potential" and ignore the language "resulting in unusual lot shapes and means for access." The subdivision ordinance clearly provides that the commission can consider the lot shapes and means of access in deciding whether to approve a preliminary plat.

In summary the planning commission is charged with planning the orderly growth of a city. The appellant, Mr. Richardson, simply refused to try to compromise with the commission. He either made a bad purchase of marginal land, or he is trying to squeeze too much profit out of the land. People who live in the subdivision or nearby will pay for the poor planning.

It comes down to whether the duly constituted authority to govern city planning and development or a private developer will decide what is best for the city. I would affirm the trial court's decision which upheld the city planning commission.

DUDLEY and NEWBERN, JJ., join in the dissent.