2009 Ark. 504

**PH, LLC, Appellant,**

v.

**CITY OF CONWAY, Arkansas, Appellee.**

**No. 08–1383.**

Supreme Court of Arkansas.

Oct. 22, 2009.

Rehearing Denied Dec. 3, 2009.

Quattlebaum, Grooms, Tull & Burrow, PLLC, by: Michael N. Shannon and Joseph R. Falasco, Little Rock, for appellant.

Michael L. Murphy, Conway City Attorney, for appellee.

Mark R. Hayes, General Counsel, Arkansas Municipal League, for amicus curiae.

Cullen & Co., PLLC, by: Tim Cullen and Tasha Taylor; and National Ass'n of Home Builders, by: Mary Lynn Huett and Christopher M. Whitcomb, of counsel, Little Rock, for amicus curiae National Ass'n of Home Builders.

ROBERT L. BROWN, Justice.

PH, LLC (PH), a land developer, appeals a decision by the circuit judge finding that the Conway City Council's denial of PH's petition to rezone its land was legislative and not arbitrary, capricious, or unreasonable. We affirm that decision.

PH owns a narrow, rectangularly shaped piece of real property in Conway. The land is presently zoned as A–1 (Agricultural). On August 29, 2007, PH applied to the Conway City Council to rezone the property as R–1 (Residential). PH also submitted an application to the Conway Planning Department, seeking to have a preliminary plat approved. The plat application sought to have the property divided into twenty lots. The Conway Planning Commission held a public hearing and voted unanimously to approve PH's preliminary plat conditionally, subject to rezoning by the city council. At the same meeting, the planning commission unanimously recommended to deny PH's petition for rezoning. PH appealed to the city council, and, on October 9, 2007, the city council, by a vote of seven to one, denied the requested rezoning.

PH next filed a complaint in the circuit court and requested a de novo review and jury trial under Arkansas Code Annotated section 14–56–425. In the alternative, it sought a declaratory judgment that the city council acted beyond its authority in denying the rezoning request and that its actions were arbitrary, capricious, and unreasonable. PH then moved for partial summary judgment and asked to have its rights established under section 14–56–425. The circuit judge held a hearing on

the motion and ruled from the bench that section 14–56–425 did not apply because the city council's action was legislative in nature. An order to that effect was entered on May 8, 2008.

Following that order, the circuit judge conducted a bench trial on the issue of whether the city council had acted arbitrarily, capriciously, or without a reasonable basis. The judge heard testimony from John Pennington, the owner of PH and the property in question; Bryan Channing Patrick, director of the Conway Planning and Development Department; six of the city aldermen who voted not to rezone; the one city alderman who voted to rezone; John Castain, a city-planning and land-use consultant; and Tab Townsell, the mayor of Conway. The deposition testimony of Shelley Mehl, the seventh alderman who voted against rezoning, was introduced at trial.

On June 24, 2008, the circuit judge entered an order and judgment, finding that "there are legitimate concerns regarding the rezoning request and the City did not act arbitrarily and capriciously." The order rejected all claims by PH and dismissed its complaint.

I. *Nature of City Council's Decision*

We first address PH's point on appeal that the circuit judge erred in determining the city council's vote not to rezone was legislative and in dismissing its claim for de novo review and a jury trial under section 14–56–425. According to PH, the city council's decision to deny its rezoning request was administrative in nature, and section 14–56–425, accordingly, applies. We turn to the applicable statutory law.

Arkansas Code Annotated sections 14–56–401 through 14–56–426 provide the Code for Municipal Planning. Section 14–56–425 of that Code specifically states:

In addition to any remedy provided by law, appeals from final action taken by the administrative and quasi-judicial agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure which applies to the appeal in civil actions from decisions of inferior courts, including the right of trial by jury.

Ark.Code Ann. § 14–56–425 (Repl.1998).

■ The plain language of that statute makes clear that it applies only to final decisions from administrative or quasi-judicial agencies. It is well settled that when a municipality acts in a legislative capacity, it exercises a power conferred upon it by the General Assembly. ⌊₄*See, e.g., City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 336, 916 S.W.2d 95, 97 (1996). This court has also clearly held that when city councils exercise their legislative power, courts will review their decisions only to determine if they are arbitrary, capricious, or unreasonable. *See, e.g., id.* at 336–37, 916 S.W.2d at 97. If the city council's action is purely administrative, then section 14–56–425 applies. The question in the instant appeal turns on whether the city council's action in denying PH's rezoning request was administrative or legislative in nature. To answer the question, we must examine our case law.

In *Wenderoth v. City of Fort Smith*, plaintiffs brought suit in circuit court to challenge a Fort Smith Board of Directors' ordinance, which rezoned properties that were adjacent to their land. 251 Ark. 342, 472 S.W.2d 74 (1971). This court ruled that the predecessor to section 14–56–425, under which the plaintiffs had filed suit in circuit court, was unconstitutional because it permitted a de novo review of "final action taken by the administrative, quasi judicial, *and legislative* agencies." *Id.* at 344, 472 S.W.2d at 75 (citing Ark. Stat.

Ann. § 19–2830.1) (emphasis added). This court held that the statute could not, according to the Separation of Powers Clause in the Arkansas Constitution, "empower the judiciary to take away the discretionary powers vested by our legislature in the city's legislative body to enact zoning and rezoning ordinances." *Id.* at 345, 472 S.W.2d at 75. ⌊₅The statute was thereafter amended to provide for de novo review of only administrative and quasi-judicial agency decisions.

Eight years after *Wenderoth*, this court again addressed the proper standard of review in zoning cases. *See City of Conway v. Hous. Auth. of Conway*, 266 Ark. 404, 584 S.W.2d 10 (1979). In *City of Conway*, the Conway Housing Authority applied to the Conway Planning Committee to rezone a parcel of land from R–3 (Residential) to B–3 (Business). The committee denied the request, and the Conway City Council affirmed that decision. The housing authority filed a complaint in circuit court, contesting the failure to rezone, and the judge rezoned the property to B–3. The city appealed, and, on review, this court affirmed the circuit judge's finding that the city acted arbitrarily.

We specifically said,

The General Assembly saw fit to give cities the right to exercise zoning authority ... [and] granted the cities the right to legislate upon zoning matters. This right is, of course, not unlimited. Therefore, when a municipality, pursuant to authority granted by the General Assembly, takes action in zoning classifications, it is exercising a legislative function and is not subject to review by the courts of its wisdom. Neither do the courts have power to review such legislative action by the cities in a de novo manner. In fact, when the General Assembly attempted to grant the courts power to review such actions de novo,

we held such actions unconstitutional. Therefore, it follows that the power of the court to review the action of the municipalities is limited to determining whether or not such action was arbitrary, capricious, or wholly inequitable. *Id.* at 409, 584 S.W.2d at 13 (internal citations omitted). While the *City of Conway* court did not explicitly address whether the city council's decision to deny the rezoning request was legislative in nature, it did say that "[i]n zoning matters the General Assembly has delegated *legislative power* to the cities in matters relating to zoning of property." *Id.* (emphasis added).

Two years after *City of Conway* was decided, this court again held that the decision of a city council not to rezone a piece of property was subject to review based on whether the city council acted arbitrarily, capriciously, or unreasonably. *See City of Little Rock v. Breeding,* 273 Ark. 437, 442, 619 S.W.2d 664, 667 (1981). The *Breeding* court said that "[i]t has been well-established that such zoning decisions of the city are legislative in nature...." *Id.*

In *City of Lowell v. M & N Mobile Home Park,* some fifteen years later, this court relied on *City of Conway* for the proposition that "the judicial branch does not have the authority to review *zoning legislation* de novo, as that would constitute an unconstitutional taking of the power of the legislative branch." 323 Ark. at 337, 916 S.W.2d at 98 (emphasis added). In *City of Lowell,* a landowner owned 7.19 acres of land, of which two acres were zoned MHP for a mobile home park, and the remaining land was zoned R–1, for single-family dwellings. The landowner applied to the planning commission to have the R–1 land rezoned as MHP. The commission denied the request, and the city council likewise rejected the application. The landowner then filed a complaint in

circuit court, contesting the zoning decision, and the judge rezoned the land as MHP.

This court reversed the circuit judge's decision. We did not expressly determine that the city council's action was legislative in nature but said:

In summary, the party alleging that legislation is arbitrary has the burden of proving that there is no rational basis for the legislative act, and regardless of the evidence introduced by the moving party, the legislation is presumed to be valid and is to be upheld if the judicial branch finds a rational basis for it. It is not for the judicial branch to decide from evidence introduced by the moving party whether the legislative branch acted wisely.

*Id.* at 340, 916 S.W.2d at 99.

Following our *City of Lowell* decision, this court appeared to change the law regarding whether some zoning decisions, and specifically a city council's denial of a zoning request, were legislative in nature. *See Camden Cmty. Dev. Corp. v. Sutton,* 339 Ark. 368, 5 S.W.3d 439 (1999). In *Camden,* an organization owned land and petitioned to have it rezoned from RS–2 (Residential) to M–2 (Manufacturing). The City of Camden Planning Commission recommended that the application be granted, but the city board refused to rezone the property. After failing to have the property rezoned by the board, the landowners circulated an initiative petition seeking to have the issue put on the ballot for popular vote. The petition was certified. The Fairview Community Defense Committee, which opposed the rezoning, then filed an action in circuit court, seeking to remove the initiative from the ballot. The circuit judge found that "issues concerning whether to rezone are administrative decisions, not legislative, and thus are

not subject to the initiative process." This court affirmed the circuit judge's decision.

We began our analysis in *Camden* by framing the issue as "whether the actions taken by the Commission and the City Board were legislative or administrative." *Camden,* 339 Ark. at 372, 5 S.W.3d at 442. This court then summarized the test for determining the difference between legislative and administrative acts:

> Both legislative and executive powers are possessed by municipal corporations. . . . The crucial test for determining what is legislative and what is administrative is whether the ordinance is one making a new law, or one executing a law already in existence. . . . Executive powers are often vested in the council or legislative body and exercised by motion, resolution or ordinance. Executive action evidenced by ordinance or resolution is not subject to the power of the referendum, which is restricted to legislative action as distinguished from mere administrative action. The form or name does not change the essential nature of the real step taken.

339 Ark. at 373, 5 S.W.3d at 442 (quoting *Scroggins v. Kerr,* 217 Ark. 137, 228 S.W.2d 995 (1950)). We then found that the city board had not taken legislative action because its "decision to not accept the Commission's administrative proposal was only a rejection of proposed administrative action and did not constitute any legislative action or administrative action by the City Board." *Id.*

In its opinion, the *Camden* court distinguished the *Wenderoth* decision and specifically found that there, "the city had *adopted* a proposed change in the comprehensive ordinance" and the court did not, in that case, "analyze the action of the city on the issue of whether it was administrative or legislative in nature." *Id.* at 374, 5 S.W.3d at 443. The *Camden* court expressly held that "[i]f the observations in *obiter dicta* in *Wenderoth* are inconsistent with this holding we clarify, modify, or overrule such statements to the extent that they may be in conflict with our holding in this opinion." *Id.* at 375, 5 S.W.3d at 443.

Four years after our decision in *Camden* was handed down, this court had occasion to revisit its holding. *See Summit Mall Co. v. Lemond,* 355 Ark. 190, 132 S.W.3d 725 (2003). In *Summit Mall,* landowners brought suit in circuit court, seeking to enjoin the City of Little Rock from issuing a building permit to Summit Mall or taking any other action pursuant to an enacted ordinance, which granted Summit Mall permission to develop a tract of land in West Little Rock. There were many issues on appeal in *Summit Mall,* but one is relevant to the instant case. Summit Mall and the city each argued that the circuit court lacked subject matter jurisdiction to hear the case because the City Board's action was administrative and any challenge to the ordinance should have been brought under section 14–56–425.

This court disagreed that, under our holding in *Camden,* the city's rezoning decision was administrative in nature and should have been brought under section 14–56–425. We first noted that in *Camden,* "the appellant had sought rezoning of its property from the Camden Planning Commission when a comprehensive zoning plan was already in effect." *Id.* at 200, 132 S.W.3d at 731. We further attempted to distinguish the facts in *Camden* and said in that case "no action was taken by the City Board. Because the City Board failed to pass any ordinance, it obviously did not act legislatively." *Id.* In the *Summit Mall* case, however, the city board "not only approved the recommended action of the Planning Commission and amended [the ordinance], but it rezoned the subject property and added new, specialized condi-

tions to accommodate the rezoning." *Id.* at 201, 132 S.W.3d at 732. We held that this action clearly constituted rezoning and was a legislative act by the City Board.

In the instant case, the circuit judge made the following, specific, findings regarding whether the city council's action was legislative or administrative in nature:

> [L]owell and the body of case law it represents hold that *de novo* review is inappropriate in a case involving an appeal to circuit court of a city council's denial of a requested rezoning. *Camden* does not purport to overrule that body of law, as the question of "administrative" versus "legislative" action in that case was analyzed in the specific context of whether an initiative could be held pursuant to Amendment 7.
>
> . . . .
>
> The court finds that analyzing the question of "administrative" versus "legislative" action by a city council in the denial of a proposed rezoning depends upon the context, and that an initiative question is a different context than the question of standard of review on an appeal of a denial of requested rezoning:
>
>> But the sense in which the word "legislation" is used in this connection is not always the same as that in which it is used in other contexts. Conduct allowed as "legislative" in character for one purpose may be deemed "not legislative" for some other and different purpose.
>
> *Scroggins v. Kerr,* 217 Ark. 137, 228 S.W.2d 995 (1950). The Court recognizes that the denial of Plaintiff's request for rezoning in this case was administrative in nature under *Camden* for purposes of applying Amendment 7 to the Arkansas Constitution, but the Court holds that the denial of Plaintiff's request for rezoning was legislative in nature for purposes of applying Ark. Code Ann. § 14–56–425.

This court now takes this opportunity to clarify whether decisions by a city council to approve or deny a requested rezoning of land are legislative or administrative in nature. ┃₁₁┃We hold, in line with our precedent excepting the *Camden* decision, that zoning decisions by city boards are legislative in nature. We specifically hold that zoning decisions, whether grants or denials, are legislative in nature. Accordingly, the procedure set forth in section 14–56–425 does not apply. Moreover, because our holding in *Camden Cmty. Dev. Corp. v. Sutton,* 339 Ark. 368, 5 S.W.3d 439 (1999), involved a denial of a zoning request and has lent confusion to this issue, we overrule it.

We affirm the circuit judge on the point that the city council's action was legislative in nature, but we dissociate ourselves from the judge's attempt to distinguish *Camden* because we are overruling that case in this opinion.

### II. *Arbitrary, Capricious, or Unreasonable*

Because we hold that the city council's action was legislative in nature, we turn next to the question of whether the circuit judge clearly erred in holding that it was not arbitrary, capricious, or unreasonable. PH contends that the circuit judge erred in finding that there were "legitimate concerns regarding the rezoning request and that the City did not act arbitrarily or capriciously." It specifically asserts that (1) the city council acted outside of its authority in considering factors that were only to be analyzed by the planning commission; (2) the city council's decision constitutes illegal reverse spot zoning; (3) the city council's actions constituted improper contract zoning; and (4) the city council's decision is not supported by substantial evidence.

■ ⌊₁₂We begin by observing once more that the standard for review of legislative acts by the city council is well settled. The court should affirm the city council's decision unless it was arbitrary, capricious, or unreasonable. *See City of Lowell,* 323 Ark. at 336–37, 916 S.W.2d at 97. The circuit judge highlighted the following factors on the arbitrariness point and made his findings and conclusions as follows:

1. The deference that must be given to the city council's actions as being legitimate.

2. The unique configuration of the property in question here today.

3. The location of the property as it relates to the elementary school and the safety concerns expressed by the citizens, especially in light of Mr. Pennington's recommendations of what he would do to go above and beyond what was required under R–1.

4. Mr. Castain's assessment that an alleyway in the back may be better, given the fact that an R–1 zoning would require all lots be given access to Country Club, which is a collector street.

5. The Court finds at this point in time that there are legitimate concerns regarding the rezoning request and that the City did not act arbitrarily or capriciously.

6. With respect to PH's contentions regarding *Richardson v. City of Little Rock Planning Comm'n,* 295 Ark. 189, 747 S.W.2d 116 (1988) and "reverse spot zoning," the Court thinks the one thing that is very imperative is that the cases all talk about property that is similarly situated. Just because the property is surrounded by R–1 does not require that the city council automatically rezone this property as R–1. The Jefferson Place, Applewood, Westfield and White Oak Drive areas all have been zoned as R–1 and developed and do not dump onto the collector street. I think that is different and shows that those properties, as developed, are not similarly situated as it relates to the property in question. So I do not find that *Richardson* controls.

7. The Court does not find any reverse spot zoning or attempt to contract zone.

8. Based upon, but not limited to, the above and forgoing, the Court hereby denies all the claims of PH, LLC.

■ ⌊₁₃This court's standard of review on appeal is also well settled. *See, e.g., Smith v. City of Little Rock,* 279 Ark. 4, 648 S.W.2d 454 (1983); *see also* Ark. R. Civ. P. 52(a) (2009). This court will affirm the circuit judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Id.* at 7, 648 S.W.2d at 456; *see also City of Little Rock v. Breeding,* 273 Ark. at 442, 619 S.W.2d at 667. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on the entire evidence is left with a firm conviction that a mistake has been committed; disputed facts and determinations of credibility are within the province of the fact-finder. *See, e.g., Chavers v. Epsco, Inc.,* 352 Ark. 65, 70, 98 S.W.3d 421, 423 (2003).

## A. Planning Commission Factors

■ PH devotes a substantial part of its brief before this court to its argument that the city council considered impermissible factors. PH specifically maintains that the "Planning Commission is vested with the exclusive authority to administer the Subdivision Regulations regarding the development of land and 'provisions of access to lots and parcels.'" PH contends that once the planning commission determined that the proposed plat met the minimum requirements under Conway's Subdivision

Regulations for an R–1 zoning designation, this court's decision in *Richardson v. City of Little Rock Planning Commission* precluded the city council from weighing traffic and safety concerns in deciding whether to grant the rezoning request. 295 Ark. 189, 747 S.W.2d 116 (1988). This argument must fail.

In *Richardson,* a landowner submitted a subdivision application to the Little Rock Planning Commission, which was denied. The landowner brought an action in circuit court challenging the denial, and the judge found that, even though certain technical violations of the subdivision regulation were not the basis for the planning commission's denial, nevertheless the commission had the discretion to disapprove the application. This court reversed, holding that "[w]hen a subdivision ordinance specifies minimum standards to which a preliminary plat must conform, it is arbitrary as a matter of law to deny approval of a plan that meets those standards." *Id.* at 191–92, 747 S.W.2d at 117.

PH argues in the instant case that the city council's denial of his rezoning petition was an "end run" around *Richardson* because the city council expressed traffic concerns that were only to be weighed by the planning commission in determining whether to approve the preliminary plat. We disagree. Nothing in *Richardson* prevents the city council from considering potential traffic problems or public safety in deciding whether to rezone. In fact, the *Richardson* case specifically says that "if the plat is within the use permitted *by the zoning classification* and meets the development regulations set forth in the subdivision ordinance, then the plat by definition is in 'harmony' with the existing subdivisions." *Id.* at 192, 747 S.W.2d at 117 (emphasis added).

In the instant case, the preliminary plat was not "within the use permitted by the zoning classification" because the land was still zoned A–1. The fact that the planning commission approved a preliminary plat, in the event the land was rezoned to R–1, does not automatically entitle PH to have the property rezoned. We further observe that PH cites no authority for the proposition that the city council was precluded from considering traffic and safety concerns in assessing its rezoning request. It is well settled that this court requires parties to cite authority for arguments made on appeal. *See, e.g., Gatzke v. Weiss,* 375 Ark. 207, 215, 289 S.W.3d 455, 461 (2008).

The circuit judge's decision that *Richardson* did not apply in the instant case and that the city council's actions were not arbitrary, capricious, or unreasonable was not clearly erroneous.

## B. Reverse Spot Zoning

PH also claims that the city council's denial of the rezoning request was reverse spot zoning because the property is an "agricultural island in a sea of residential."

This court has acknowledged that "spot zoning, by definition, is invalid because it amounts to an arbitrary, capricious and unreasonable treatment of a limited area within a particular district." *See Riddell v. City of Brinkley,* 272 Ark. 84, 87, 612 S.W.2d 116, 117 (1981) (quoting R. Wright and S. Webber, *Land Use* (1978)). Furthermore, we have said that spot zoning is arbitrary because "it departs from the comprehensive treatment or privileges not in harmony with the other use classifications in the area *and without any apparent circumstances which call for different treatment.*" *Id.* (emphasis added). Reverse spot zoning has been recognized where a city arbitrarily refuses to rezone property to bring it in conformity with the surrounding property. *See Penn Cent. Trans. Co. v. City of New York,* 438 U.S.

104, 132, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (Reverse spot zoning is "a land-use decision which arbitrarily singles out a particular parcel for different, less favorable treatment than the neighboring ones.").

The circuit judge did not clearly err in finding that there was no reverse spot zoning in the instant case and that the city council's decision was reasonable and based on legitimate concerns. According to the testimony of seven aldermen, they denied PH's request based on the unique configuration of the land involved and the restrictions of an R–1 zoning classification. They also emphasized legitimate traffic and safety reasons for the denial. We further note that the instant case is distinguishable from the cases cited by PH from other jurisdictions in that the city council has not refused to rezone PH's property from agricultural to residential. Rather, it determined that R–1 was not the appropriate residential zoning classification.

In *City of Conway*, this court affirmed the circuit judge's finding that the city acted arbitrarily in refusing to rezone the landowner's property from residential to business. The circuit judge based the decision, in part, on the fact that the property on all four sides of the parcel in question had already been rezoned to business. 266 Ark. at 410, 584 S.W.2d at 13. In that case, however, the evidence supported the circuit judge's additional finding that the city actually wanted to purchase the property from the landowner, and its denial of the rezoning request was arbitrary because it was aimed at inducing the landowner to sell to the city. *Id.* That is a very different scenario from that set out in the instant case.

As a final point, this court has repeatedly stated that the fact that property is surrounded by parcels with different zoning designations does not automatically entitle a landowner to have his or her property rezoned. *See id.* at 409, 584 S.W.2d at 13. We have said that "this is so even though the highest and best use of the property might be other than the current zone designation." *Id.* The *City of Conway* court clearly said that "[i]f we were to allow any property abutting business property to be rezoned as business property, there would be no need of a zoning ordinance in the first place." *Id.* We affirm on this point.

## C. Contract Zoning

PH also urges that the city council's suggestion that it would consider rezoning the property to Planned Use Development (PUD) as an alternative residential designation indicates that it intended to force improper contract zoning on PH. Contract zoning occurs when there is an agreement between a property owner and a local government in which the owner agrees to certain conditions in return for the government's rezoning or enforceable promise to rezone. *See Murphy v. City of West Memphis*, 352 Ark. 315, 322, 101 S.W.3d 221, 226 (2003). The *City of West Memphis* case indicates that some jurisdictions hold that contract zoning is prohibited and others hold that it is permissible. *Id.* However, this court did not determine whether contract zoning would be permitted in Arkansas in *City of West Memphis* and has not done so since. *Id.*

We likewise decline to do so in the instant case. PH has not shown this court that there was an agreement to rezone the property or that it agreed to any conditions proposed by the city council. Furthermore, despite the citation to authority from other jurisdictions regarding contract zoning, PH has not cited this court to any case in which a court found improper contract zoning where a city council considered a different, more suitable, zone designation in determining whether to approve

a petition to rezone. Instead, PH makes the conclusory statement that "the only purpose for requiring PH to go through the PUD in this instance is to allow the City to have subjective control over the development and to exact promises from PH as a *quid pro quo* for rezoning." As already discussed, however, that is not the only reason the city council might prefer the PUD. The record reflects that the PUD, unlike the R–1 designation, could accommodate the city council's legitimate concerns about traffic and safety.

### D. Substantial Evidence

PH finally contends that the city council's decision is not supported by substantial evidence. This point on appeal, though, incorrectly frames our standard of review. The circuit judge determined that the city council's decision was not arbitrary, capricious, or unsupported by any rational basis. As has already been discussed, the circuit judge did not clearly err in finding that there were legitimate, reasonable concerns about rezoning the property.

Affirmed.