CITY OF FAYETTEVILLE *v.* IBI, INC.

83-125                                                           659 S.W.2d 505

Supreme Court of Arkansas
Opinion delivered October 31, 1983

*James N. McCord,* City Atty., for appellant.

*Kincaid, Horne & Trumbo,* by: *David Horne,* for appellee.

GEORGE ROSE SMITH, Justice. The appellee IBI is a corporation proposing to plat and develop residential subdivisions within the territorial planning jurisdiction of the City of Fayetteville. When IBI sought the Fayetteville Planning Commission's approval of a proposed 7.95-acre subdivision, the commission refused to approve it unless IBI made a contribution to the city of $85.00 per lot, the money to be invested at interest and eventually to be used for the acquisition or development of public parks in the vicinity. IBI refused to make the contribution and brought this suit for a judgment declaring the pertinent municipal ordinances and regulations to be unconstitutional in part and for an injunction against their enforcement. By agreement the facts were either stipulated or were conceded to conform to the depositions of the chairman and the administrator of the planning commission. This appeal is from a decree holding the required contribution by IBI to be unconstitutional, on various grounds.

In 1957 the legislature enacted a comprehensive act authorizing municipalities to adopt and enforce plans for the development of land within the municipality and within five miles of its city limits. Ark. Stat. Ann. §§ 19-2825 to -2831 (Repl. 1980). Pursuant to that act the city of Fayetteville created a planning commission and in 1970 and 1981 adopted the ordinances now challenged by IBI.

Under Fayetteville's Comprehensive Land Use and Public Facilities Plan (1970-1990), the territory within the planning commission's jurisdiction is divided into four districts, which are each subdivided into several neighborhoods. With respect to public parks, the planning commission projected the maximum possible residential population for each neighborhood by 1990. It then determined the

number of acres of public parks that would be needed in each neighborhood if and when that maximum was reached. By subtracting the existing park acreage from the projected need, the planning commission determined the park acreage that would be needed in each neighborhood if it reached its maximum residential population.

IBI's specific neighborhood comprises more than a thousand acres, the exact figure not being shown. Twenty-eight acres of parks will be needed if that neighborhood reaches its projected maximum population. There being now only twelve acres of parks in the neighborhood, there may be a deficit of sixteen acres. To provide for the acquisition of the needed acreage, every developer of a new residential subdivision must dedicate a specified fraction of an acre for each residential unit or make a cash contribution in a specified amount in lieu of the dedicated land. No dedication of land will be accepted unless the planning commission finds it to be suitable for park purposes and consistent with the city's general plan.

The governing statute, Section 19-2829 (c) contains two paragraphs applicable to this case:

The regulations [approved by the city's legislative body] shall require the developer to conform to the plan or plans currently in effect. The regulations may require the reservation, for future public acquisition of land for community or public facilities indicated in the plan or plans. Such reservations may extend over a period of not more than one year from the time the public body responsible for the acquisition of reserved land is notified of the developer's intent.

When a proposed subdivision does not provide an area or areas for a community or public facility based on the plan or plans in effect, the regulations may provide for reasonable dedication of land for such public or community facilities, or for a reasonable equivalent contribution in lieu of dedication of land, such contribution to be used for the acquisition of facilities that serve the subdivision.

In most cases passing upon the question, similar statutes have been held to be constitutional. Annotation, 43 A.L.R. 2d 862 (1972). We need not reach the constitutional issue, however, for in our opinion Fayetteville does not yet have a sufficiently definite plan to justify the contribution it seeks to exact from IBI and other developers.

So far, the Fayetteville plan is nothing more than a statement of broad possibilities for the future. There is an approved map of the four districts and their component neighborhoods. There is a determination of the park acreage that will be needed in each neighborhood if it reaches the population growth projected for 1990. There is a finding of the amount of land or money per residential unit that each developer must contribute toward future parks or park equipment. But that is all.

The two planning commission witnesses made no pretense of saying that any definite plan for the specific location of future parks now exists. IBI could not have offered any land, presumably anywhere, in the required fractional acreage that would have been accepted by the city. No land has been accepted from any developer; only contributions of money are acceptable. No location for any future park has been determined. Such locations will be decided on a case-by-case basis, as the particular area develops in the future. This is said to be good planning, which no doubt it is. The money contributed will be placed in an interest-bearing account, but there is no way of saying just when it will be spent, or even for what, since it may be used not only for the acquisition of land but also for equipping existing or future parks.

As we read the statute, it contemplates something more specific than the Fayetteville plan in its present stage. The statute requires the developer "to conform to the plan or plans currently in effect." § 19-2829, *supra.* In effect there is no plan in effect in Fayetteville, unless a map and a statement of projected deficiencies in park acreage can be regarded as a plan currently in effect. The witnesses did not know whether any acreage in IBI's entire neighborhood is suitable for park purposes; that must depend upon the

future growth of the residential area. There is apparently no way of determining when, if ever, the contributed money will be spent, or where, other than in the district, or for what, except as the planning commission may eventually decide. Yet IBI must make its contributions now, with no way of assuring its purchasers of residential lots that the increased price they must pay will result in their access to a public park within ten years or even within fifty years.

The statute confirms the view that something reasonably definite is essential to a plan requiring the dedication of land or the contribution of money. In addition to the reference to the plan "currently in effect," it is required that should the city require the developer to reserve land for future public acquisition or public facilities, that reservation may extend only for a period of not more than one year from the time the city is notified of the developer's intent. § 19-2829, quoted above. Another section of the statute provides that the city may adopt a master street plan or a community facilities plan, the latter apparently including public parks, but no parcel of land lying within a mapped street or proposed public use facility shall be privately developed until one year after the city has been notified to execute a written option to acquire the land or file a suit for its condemnation. § 19-2827 (d) and (g). Thus the city in two specific instances is required to act within a period of one year. We are unwilling to say that the legislature intended . for the cash contributions to be made in return for a vague assurance that the money would be spent at some time in the future, somewhere in the neighborhood, for some public park purpose, with no provision for a refund to the contributor even if the residential area should never be developed as expected.

Affirmed.