The Honorable Louis McJunkin State Representative P.O. Box 223 Springdale, Arkansas 72765-0223
Dear Representative McJunkin:
This is in response to your request, on behalf of Springdale City Attorney Jeff C. Harper, for an opinion on the following question:
 When a new subdivision is proposed to a municipality, may the municipality determine the community or public facilities which will be required to serve the subdivision, and then charge to the subdivider, a contribution for such facilities that will have to be provided to serve the subdivision?
The request indicates that the community or public facilities referred to above will include schools, playgrounds, parks and recreational areas, and public utility terminals and lines.
While a municipality may impose such a fee in certain circumstances, it is my opinion that the municipality may not impose it in the manner described in your request. The municipality may not undertake to determine the required public facilities after receipt of the developer's proposal to subdivide; rather, in order to impose the fee under existing law, the municipality must, prior to its receipt of a developer's proposal, determine and reduce to a reasonably definite plan the community or public facilities contemplated to be needed; adopt regulations providing for such a fee; and confirm that the proposed subdivision plan does not provide areas for such facilities in accordance with the plan. In addition, the municipality must apply the fee to the acquisition of facilities that serve the subdivision. Each of these requirements is discussed further below.
As noted in Mr. Harper's letter, A.C.A. § 14-56-417 provides for the imposition of what is sometimes referred to as an "impact fee." Subsection (b)(6) of A.C.A. § 14-56-417 is as follows:
 (6) When a proposed subdivision does not provide areas for a community or public facility based on the plans in effect, the regulations may provide for reasonable dedication of land for such public or community facilities, or for a reasonable equivalent contribution in lieu of dedication of land, such contribution to be used for the acquisition of facilities that serve the subdivision.
Several conditions must be present in order for a municipality to exact an impact fee under the authority of A.C.A. § 14-56-417, some of which are apparent on the face of the statute and some of which are found in applicable case law.
First, there must be one or more "plans in effect." The statute is not entirely clear to which plans it refers. Subsection (a)(1) of A.C.A. §14-56-417 provides that the regulations contemplated thereby may be adopted only after the adoption and filing of a master street plan. The context of subsection (6) leads me to conclude, however, that the reference therein is to, or at least includes, the "community facilities plan" provided for by A.C.A. § 14-56-414(c).
The plan must be "reasonably definite" with respect to the nature and locations of the contemplated community or public facilities. City ofFayetteville v. IBI, Inc., 280 Ark. 484, 659 S.W.2d 505 (1983). In that case, the court considered the adequacy, under A.C.A. § 14-56-417(b)(5) and (6) (then codified as Ark. Stat. Ann. § 19-2829(c)), of a plan providing for future park development, and held that an impact fee could not be exacted under A.C.A. § 14-56-417(b)(6) where the plan merely determined the amount of park acreage that would be needed in each neighborhood of the city and established the amount of land or money per residential unit that would be exacted from developers and applied toward future parks or park equipment. Even though the plan purportedly established an amount of land that would be acceptable as a contribution in lieu of cash, the court indicated that the city would not, in fact, accept land, apparently because there could be no assurance that contributed land could actually be used for park purposes, there being no reasonably definite plan for locating parks. The court found the plan to be deficient in failing to specify, or to provide some other way of determining, "when, if ever, the contributed money will be spent, or where, other than in the district, or for what, except as the planning commission may eventually decide." 280 Ark. at 488.
Second, the municipality must have adopted, under A.C.A. § 14-56-417, regulations providing for "reasonable dedication of land for such public or community facilities, or for a reasonable equivalent contribution in lieu of dedication of land. . . ." A.C.A. § 14-56-417(b)(6).
In City of Jonesboro v. Vuncannon, 310 Ark. 366, 837 S.W.2d 286 (1992), the court considered a city's authority under A.C.A. § 14-56-417(b)(2)(B) to force a landowner to dedicate property for a right of way at the time of the landowner's application for the replatting of the property. Arkansas Code Annotated § 14-56-417(b)(2)(B) provides that "[the regulations] may provide for the dedication of all rights-of-way to the public." The court held that this language is permissive only, and does not in and of itself empower a municipality to require such dedication; rather, it only gives the municipality power to adopt regulations that themselves provide for such dedication. In my view, a court would interpret the provisions of A.C.A. § 14-56-417(b)(6) similarly and hold that an impact fee may be imposed only under a regulation adopted thereunder, not under the statute itself.
Once adopted, the regulations should be applied so as to result in similar treatment of persons and properties similarly situated. SeeRichardson v. City of Little Rock Planning Comm'n, 295 Ark. 189,747 S.W.2d 116 (1988).
Third, the statute provides that an impact fee may be imposed only "[w]hen a proposed subdivision does not provide areas for a community or public facility based on the plans in effect. . . ." A.C.A. §14-56-417(b)(6). While there are no Arkansas cases interpreting this part of the statute in particular, it is my view that this language, read in conjunction with City of Fayetteville, supra, means that a developer must be afforded a meaningful opportunity to incorporate in his subdivision plan a dedication of land, rather than a cash contribution, to be used for community or public facilities in accordance with the reasonably definite community facilities plan. While it appears that a community facilities plan that does not indicate the precise parcels on which future community or public facilities will be located likely would be sufficient under A.C.A. § 14-56-417(b)(6) in many or most cases, every community facilities plan must "indicat[e] the general location and extent of the service areas of, and the future requirements of" community or public facilities. A.C.A. § 14-56-414(c).
Fourth, the contribution must be used to acquire "community or public facilities." While that term is not expressly defined in the statute, all of the facilities mentioned in Mr. Harper's letter, other than parks, are facilities that must be addressed in a community facilities plan. A.C.A. § 16-54-414(c). That provision also requires community facilities plans to address "recreation areas," which, in my view, includes parks.
Finally, the community or public facilities acquired with the impact fee must "serve the subdivision." A.C.A. § 14-56-417(b)(6). Again, there is no case law interpreting this phrase. I expect, however, that a court presented with a dispute about whether a facility served a subdivision would decide the issue based upon the particular facts and circumstances surrounding the specific facility and subdivision. A municipality should, accordingly, carefully examine on a case-by-case basis the relationships between contemplated facilities and a proposed subdivision to ensure that this requirement is met. It likely would be difficult for a municipality to demonstrate that a facility will serve a subdivision if the subdivision is not within the facility's service area, as indicated in the community facilities plan. See A.C.A. § 14-56-414(c).
It might be argued that a municipality may impose an impact fee under its general police power, delegated under A.C.A. § 14-55-102, and thereby avoid the restrictions and limitations of A.C.A. § 14-56-417(b)(6). I express no view with respect to whether a municipality could impose an impact fee in the absence of A.C.A. § 14-56-417(b)(6), but it is my opinion that the impact fee statute constitutes an exclusive method of exacting such fees. Where state regulation is so pervasive as to make reasonable the inference that the state has left no room for supplemental legislation, local provisions in the same field are prohibited. Kollmeyerv. Greer, 267 Ark. 632, 593 S.W.2d 29 (1980). In my view, the restrictions and limitations of A.C.A. § 14-56-417(b)(6) are evidence of the legislature's intent that the statute would be exclusive; otherwise they would serve no real purpose.
In addition, the Supreme Court of Arkansas has held that "[m]unicipal zoning authority is conferred solely by State enabling legislation."Osborne v. City of Camden, 301 Ark. 420, 421, 784 S.W.2d 596 (1990). While A.C.A. § 14-56-417(b)(6) may not technically be zoning legislation, it is closely related in that both a regulation authorizing impact fees and a zoning ordinance constitute governmental restriction upon a landowner's common law right to occupy his land as he sees fit. SeeTaggart Taggart Seed Co. v. City of Augusta, 278 Ark. 570,647 S.W.2d 458 (1983). In addition, A.C.A. § 14-56-417 appears in the Code immediately after the statute authorizing zoning ordinances, and the provisions were originally contained in the same sequence in the same section of Act 186 of 1957.
In sum, it is my opinion that a municipality may impose an impact fee only under the authority granted in A.C.A. § 14-56-417(b)(6), and only in compliance with the conditions and limitations set forth therein and in applicable case law.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh